2000 ME 127

**Richard SNOW**

v.

**Robert VILLACCI et al.**

Supreme Judicial Court of Maine.

Argued April 4, 2000.
Decided June 30, 2000.

Steven D. Silin (orally), Berman & Simmons, P.A., Lewiston, for plaintiff.

Christopher C. Dinan (orally), Ivy L. Frignoca, Monaghan, Leahy, Hochadel & Libby, LLP, Portland, for defendants.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA,* SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

█ [¶ 1] Robert Villacci and Gene Villacci d/b/a Villacci Motor Sales,[1] appeal from a judgment in favor of Richard Snow entered in the Superior Court (Cumberland County, *Cole, J.*), following the court's denial of Villacci's motion for partial summary judgment. Villacci's appeal requires us to determine whether a plaintiff in a tort action may recover damages that are in the nature of a "lost earning opportunity." Because we conclude that damages of this nature may be recovered when proven to have been proximately caused by the negligence of the defendant, we affirm the judgment.

## I.  BACKGROUND

[¶ 2] In 1996, Snow took his vehicle to the Villacci facility for repairs. When

---

* Dana, J., sat at oral argument, but did not participate in the case thereafter.

1.  It appears from the record that the injury in question occurred while the Villacci business was owned by Gene Villacci Sr. On the senior Villacci's death, the business was split between the brothers, with Robert operating the service portion of the business and Gene Jr. operating Villacci Motor Sales, a limited liability company. No party contends that any named defendant is improper, and we will refer to the defendants simply as Villacci.

Robert Villacci mistakenly started Snow's vehicle while it was in gear, he pinned Snow between the car and a workbench. Snow sustained significant injuries to his legs and lost approximately fourteen weeks of work at Merrill Lynch, Pierce, Fenner & Smith Incorporated, an investment firm.[2] He then brought suit against Villacci, alleging that Robert Villacci's negligence was the proximate cause of his injuries and damages. Among the damages sought by Snow were those that he referred to as "a lost earning opportunity" resulting from the setback in his career training efforts.

[¶ 3] Snow's lost opportunity claim arose out of his anticipated progress in a professional training program. At the time of the injury, Snow was working toward a designation as a financial consultant—essentially a stockbroker position. He was in month twenty of Merrill Lynch's twenty-five-month program. Progress toward the program's goals was measured on a quarterly basis. With five months left in the program at the time of his injuries, Snow had not achieved the goals, and his successful completion of the program was possible but not assured. According to Snow, even though he was allowed an extension to complete the program after he was injured, his brief absence from the program set him back and prevented him from. successfully meeting the programs goals. At the completion of the program, he had not met the program's goals and was not invited to become a financial consultant.[3]

[¶ 4] Although Snow did not complete the program, Merrill Lynch did retain him as an investment associate, a position which allowed Snow to earn substantial income, but not the level of income he had anticipated. Snow asserted that he would not be permitted to undertake the Merrill Lynch Financial Consultant Program again and that a noncompetition agreement he had signed would prevent him from becoming a stockbroker with another company.[4] He claimed, therefore, that although he is able to earn income as an investment associate, he lost an opportunity for substantially higher income as a financial consultant.

[¶ 5] As a consequence, although Snow currently suffers no continuing physical or mental impairment or other disability caused by Villacci's negligence, he asserts that the weeks of lost work in 1996 have resulted in a current and prospective loss of an opportunity to increase his earnings.

[¶ 6] Villacci moved for partial summary judgment regarding Snow's claim for lost earning opportunity, asserting that Snow sought recovery for a type of damage that has not been and should not be recognized in Maine. The court determined that there were material facts in dispute, impliedly determining that a claim for "lost earning opportunity" was not precluded as a matter of law, and denied the motion for partial summary judgment. Thereafter, the parties entered a stipulation resolving all outstanding claims in order to allow an appeal of the issue of law raised by the defendants. The stipulation resulted in entry of a judgment in favor of Snow along with a court approved agreement that all undisputed damages would be paid immediately by the defendants and that an additional amount would be paid upon resolution of this appeal in Snow's favor. The

---

**2.** The weeks were not consecutive. After approximately ten weeks, Snow returned to work but later lost several more weeks due to arthroscopic or restorative surgery.

**3.** Villacci argues that Snow's lack of success was evident before the accident and that any failings Snow demonstrated in the final months were the result of his own shortcomings, not Villacci's negligence. Any dispute regarding proximate cause would ultimately have been resolved by the factfinder had the matter proceeded to trial.

**4.** Neither party included a copy of the noncompetition agreement in the record, and its provisions, including duration, were subject to dispute.

additional amount related solely to Snow's claimed lost earning opportunity.[5]

## II. DISCUSSION

### A. Standard of Review

■ [¶ 7] The unique procedural posture of this matter requires careful attention to the appropriate standard of review. The only question before us is whether the court erred when it *denied* summary judgment with respect to this claim for damages. "The function of a summary judgment is to permit a court, prior to trial, to determine whether there exists a triable issue of fact or whether the question before the court is solely one of law." *Bouchard v. American Orthodontics*, 661 A.2d 1143, 1144 (Me.1995), *quoted in Steeves v. Bernstein, Shur, Sawyer & Nelson, P.C.*, 1998 ME 210, ¶ 11, 718 A.2d 186, 190.

[¶ 8] Thus, unless we conclude as a matter of law that no plaintiff, under any facts, may recover damages for the loss of an earning opportunity, we need only determine that Snow presented material facts upon which a factfinder could have determined that he lost an earning opportunity, however minimal, in order to affirm the denial of the motion.[6]

### B. Damages

■ [¶ 9] Generally, a plaintiff in tort is entitled to all damages proximately caused by a wrongdoer's actions. The purpose of awarding damages in a tort action is to "make the plaintiff whole by compensating him or her for any injuries or losses proximately caused by the defendant's negligence." *See* Zillman, Simmons & Gregory, *Maine Tort Law* § 19.01 at 663 (1999). In proving damages, the plaintiff must "establish[ ] facts from which the loss may be determined to a probability." *Currier v. Cyr*, 570 A.2d 1205, 1210 (Me. 1990).

■ [¶ 10] Damages relating to lost earnings have traditionally fallen into two categories, lost wages or earnings and lost earning capacity.[7] The matter before us does not involve either type of loss. Although Snow has in some instances referred to his claim in terms of a "lost earning capacity," damages of that type are distinct from the damages he seeks. *See, e.g., Goldstein v. Sklar*, 216 A.2d 298, 309 (Me.1966) (discussing evidence necessary to make out lost earning capacity claim). A lost earning capacity claim requires evidence that the injury caused by the wrongdoer has caused an ongoing impairment that has diminished or eliminated the plaintiff's ability to earn income. *See Kaler v. Webster*, 348 A.2d 702, 703–04 (Me.1975) ("[For example], where a professional person sustains a relatively minor, albeit permanent injury of some sort, impairment of earning capacity is less obvious and the jury needs evidence connecting the injury to the alleged impairment before it can make a rational assessment of damages.").

---

5. A denial of a motion for summary judgment is not a final judgment, and therefore is not ordinarily appealable. *See Andrews v. Department of Envtl. Protection*, 1998 ME 198, ¶ 4, 716 A.2d 212, 214 (holding death knell exception to this rule applied when a defense of sovereign immunity has been asserted). Because the parties have stipulated to the entry of judgment based on the single legal issue addressed in that denial, thereby resolving all factual matters and leaving nothing for litigation, the matter is properly before us on the entry of a stipulated final judgment.

6. To date, we have not been required to address the precise question presented here. *See Decesere v. Thayer*, 468 A.2d 597, 599 n. 2

(Me.1983); *Hood v. Mercier*, 499 A.2d 147, 148 (Me.1985), *on appeal after remand*, 523 A.2d 572, 574 n. 1 (Me.1987).

7. *See* Zillman, *supra* § 19.03 at 673 (defining two components of employment related damages as lost wages and lost earning capacity). *See, also,* Horton & McGehee, *Maine Civil Remedies* § 4.3–3 at 4–7 ("[I]n a personal injury case the plaintiff may be awarded damages ... for reduced earning capacity.") A "lost earning capacity" has been defined as "the diminution or loss of the *ability* to earn money." 2 JEROME H. NATES ET AL., DAMAGES IN TORT ACTIONS § 10.21, at 10–32 (1999) (emphasis added).

■ · [¶ 11] Unlike a loss of earning capacity, an earning *opportunity* may be lost when, during the period of disability caused by the defendant's negligence, a specific earning opportunity arises which could otherwise have been be utilized by the plaintiff, but is lost because of a disability caused by the negligence of the defendant.

■ [¶ 12] One type of lost earning opportunity may occur when a person who is in an education or training program is injured and is unable to complete the program on schedule. If the injury resolves and the trainee is capable of returning to the program, the trainee may nonetheless recover damages representing the lost opportunity to obtain the improved income during the period of time in which the trainee would have begun to earn at the new level but remains in the training program. Again, the impediments to recovery are evidentiary rather than legal in nature.[8] *See* M.L. Schellenger, Annotation, *Proof of Prospective Earning Capacity of Student or Trainee, or of Its Loss, in Action for Personal Injury or Death*, 15

A.L.R.2d 418, 419–24 (1951); J.J. Director, Annotation, *Admissibility, In Personal Injury or Death Action, of Evidence as to Injured Party's Intention to Enter Occupation Other Than That Engaged in at Time of Injury or Death*, 23 A.L.R.3d 1189, 1193–96 (1969).[9]

■ [¶ 13] Here, Snow does not claim that his physical or intellectual capacity to earn an income has been impaired; rather, he claims that he lost a unique opportunity to obtain certain future earnings due to Villacci's negligence.[10] Villacci's opposition to Snow's claim, distilled to its essence, is that damages for lost earning opportunity are necessarily based on nothing more than speculation and thus may not, as a matter of law, be recovered. Although we reject such an absolute rule, we recognize the need for careful attention to the quality of the evidence by the trial court. Damages may not be awarded when the proof is speculative. *See Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 543 (Me. 1986) (quoting *Schweitzer v. Consolidated Rail Corp.*, 758 F.2d 936, 942 (3rd Cir.

8. Lost earning opportunity damages have been peripherally addressed in a number of contexts. *See, e.g., Arthaud v. Mutual of Omaha Ins. Co.*, 170 F.3d 860, 862 (8th Cir.1999) (holding, under Missouri law, that evidence was insufficient to support a claim for lost job opportunity resulting from alleged compelled self-defamation); *Jones v. Western & Southern Life Ins. Co.*, 91 F.3d 1032, 1036 (7th Cir. 1996) (holding, under Illinois law, that plaintiff in a defamation case had to provide proof that job opportunity existed and was worth a "particular amount of money" before it was proper to submit the claim to a jury); *Smith v. City of Chicago*, 913 F.2d 469, 472–74 (7th Cir.1990) (holding evidence of lost job opportunity arising from unconstitutional conduct leading to plaintiff's arrest was properly excluded when plaintiff's arrest was justified on other grounds and thus he had not suffered actual damages); *Jorgensen v. Massachusetts Port Auth.*, 905 F.2d 515, 526 (1st Cir.1990) (holding, under Massachusetts law, that evidence of a particular job opportunity was required before reputation damages would be allowed); *Rodriguez v. Henderson*, 217 Ill. App.3d 1024, 160 Ill.Dec. 878, 578 N.E.2d 57, 62, 64–65 (1991) (holding plaintiffs stated a claim and had standing to challenge the con-

stitutionality of a zoning ordinance where they alleged, among other things, lost job opportunities arising from the rezoning of a manufacturing district to a commercial/residential district).

9. Several of these analyses blur the distinction between a lost earning capacity and a lost earning opportunity. Jurisdictions addressing this type of claim have generally recognized a claim for lost earning opportunity, and in those cases where evidence of such a loss is not allowed, exclusion is generally based on the remote or conjectural nature of the evidence. *See* Schellenger, *supra*, at 421–22; Director, *supra*, at 1193–96.

10. The cases relied on by Snow are factually distinct from the present case. In each, the plaintiff's injury resulted in permanent disability or death. *See Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 700–01 (Tenn.Ct.App. 1999); *O'Malley v. Peerless Petroleum, Inc.*, 283 Pa.Super. 272, 423 A.2d 1251, 1254 (1980); *Dickens v. United States*, 545 F.2d 886, 892 (5th Cir.1977); *Frankel v. United States*, 321 F.Supp. 1331, 1335–36 (E.D.Pa. 1970); *Turrietta v. Wyche*, 54 N.M. 5, 212 P.2d 1041, 1043 (1949).

1985)). When the evidence offered to show prospective damages is in the nature of "mere guesswork and conjecture," the factfinder will be unable to determine the plaintiff's loss "with reasonable certainty." *Ginn v. Penobscot Co.*, 334 A.2d 874, 887 (Me.1975).

[¶ 14] The proposition that some claims may not have a solid evidentiary basis, however, does not lead to the conclusion that such claims will never be presented with a meaningful evidentiary foundation. It does not follow that a difficulty in proof should, as a matter of law, preclude a claim. In other words, although overcoming speculation and conjecture may be more problematic when the damages are primarily built on future expectations, difficulty in proof does not equate to the absence of a claim at law.[11]

[¶ 15] Thus, because the distinction between ordinary earnings damages and lost earning opportunity is a matter of evidentiary reliability rather than a fundamental distinction in recoverability, there is no logical or public policy reason to deny recovery to a person who has lost an opportunity due to the negligent acts of another person, as long as the elements necessary for recovery are proven by a preponderance of the evidence. If a plaintiff has in fact lost a unique opportunity to increase her earnings, and that loss was caused by the defendant's actions, she should be able to recover those damages just as she would have if the defendant's wrongdoing had caused her to lose wages. Although we recognize that proof of this type of loss may be more complex than proof of other traditional losses, we are confident that trial judges will exercise appropriate discretion in excluding evidence that is nothing more than mere hope or speculation.[12]

[¶ 16] Accordingly, recovery may be had for the loss of an earning opportunity if the claimant proves, by a preponderance of the evidence, that: (1) the opportunity was real and not merely a hoped-for prospect; (2) the opportunity was available not just to the public in general but to the plaintiff specifically; (3) the plaintiff was positioned to take advantage of the opportunity; (4) the income from the opportunity was measurable and demonstrable; and (5) the wrongdoer's negligence was a proximate cause of the plaintiff's inability to pursue the opportunity.

[¶ 17] Here, Snow presented facts upon which a rational jury could have concluded that (1) he did have an opportunity to complete the financial consultant program; (2) the opportunity was available to him personally because he had been accepted into and was engaged in the program; (3) Snow had completed twenty months of the program and was capable of completing it successfully; (4) the additional income anticipated from the financial consultant position was demonstrable and measurable and not speculative; and (5) Snow's failure to complete the program and begin earning the higher income was proximately caused by Villacci's negligence.[13] Thus, had a jury accepted Snow's

---

11. *Cf. Zeilman v. County of Kern*, 168 Cal. App.3d 1174, 214 Cal.Rptr. 746, 755 (1985); *Central La. Elec. Co. v. Pointe Coupee Elec. Membership Corp.*, 182 So.2d 752, 756 (La.Ct. App.1966).

12. For example, Snow's father is a senior financial consultant with Merrill Lynch, and Snow alleged that he might have had an opportunity to take over his father's lucrative accounts. Snow has conceded that this assertion was based on speculation rather than substantial evidence, and that it would not have been admitted at trial. *See also Jones,*

91 F.3d at 1036 (finding district court properly refused to submit lost job opportunity claim to jury where plaintiff offered nothing other than his own testimony as evidence of the existence and value of a job opportunity); *Redgrave v. Boston Symphony Orchestra, Inc.,* 855 F.2d 888, 896–97 (1st Cir.1988) (finding evidence was insufficient to fully support jury's award for lost job opportunities).

13. Villacci did assert the affirmative defense of failure to mitigate damages. *See Michaud v. Steckino*, 390 A.2d 524, 531 (Me.1978).

facts, it could have awarded damages for the period of time during which Snow was set back in his efforts to achieve his financial consultant designation, or the period of time during which Snow was unable to obtain the higher income level, as a result of Villacci's negligence.

[¶ 18] Finally, Villacci notes that Snow hoped to prove a *permanent* loss of increased income based on his claim that he had lost a once-in-a-lifetime opportunity from which he could never recover.[14] Villacci asks us to hold that a plaintiff may never recover for the permanent loss of income opportunity when the plaintiff no longer suffers from any disability caused by the defendant.[15] Because of the unique procedural posture of this matter, however, we do not reach this issue. All that Snow was required to do to survive the motion for summary judgment was to demonstrate that there were sufficient facts upon which a jury could award damages for a "lost earning opportunity." He did so. Whether Snow could have recovered for only a minimal period of time or for a longer period cannot be determined on this record.

[¶ 19] The trial court had before it a claim for lost earning opportunity and a motion for partial summary judgment regarding the recoverability of those damages. It was not called upon to make the finely tuned evidentiary decisions that would be required as the matter proceeded to trial. Because it did not err in concluding that a lost earning opportunity is a damage recoverable under Maine law, it properly denied Villacci's motion for partial summary judgment.

The entry is:

Judgment affirmed.

---

14. We cannot determine from this record whether and to what extent Snow's evidence of a permanent loss would have been admitted at trial or persuasive if admitted.

15. Villacci urges us to define more precisely the parameters of a lost earning opportunity claim. We cannot do so on this record. Had the matter proceeded to trial, the trial court would have been called on to exclude evidence that was speculative or for which no causal connection to the defendant's negligence was demonstrated. In the absence of the inevitable sifting of evidence by the court in the context of the trial itself, we cannot undertake an appellate review of admissibility determinations. *Cf. State v. Brackett,* 2000 ME 54, ¶ 7, 754 A.2d 337, 339.