607 S.E.2d 459

**Tifinie M. COOK, Plaintiff Below, Appellant**

v.

**Faith Woods COOK, Defendant Below, Appellee.**

No. 31703.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 8, 2004.

Decided Dec. 1, 2004.

354

Carte P. Goodwin, Goodwin & Goodwin, LLP, Charleston, West Virginia, Attorney for the Appellant.

David A. Mohler, Atkinson, Mohler & Polak, Charleston, West Virginia, Attorney for the Appellee.

ALBRIGHT, Justice:

This case involves a certified question from the Circuit Court of Kanawha County, presented to this Court pursuant to West Virginia Code § 58–5–2 (1998) (Supp.2004)[1] and in adherence with Rule 13 of the West Virginia Rules of Appellate Procedure.[2] The question, certified by order dated November 6, 2003, arose in an underlying tort action and concerns the nature of evidence needed to support a claim for future damages in the form of lost earnings. The question as certified as well as the trial court's answer follow:

> Does *Jordan v. Bero,* 158 W.Va. 28, 210 S.E.2d 618 (1974), require a personal injury plaintiff to demonstrate through medical evidence the permanent deterioration of her physical condition where her claim for lost future wages depends not on the lasting effect of her injuries, but rather on Plaintiff proving that a specific employment opportunity has been forever lost to her as a proximate cause of the defendant's tortious conduct?

Answer of the circuit court:

> West Virginia law requires proof of a permanent injury before future damages can

---

1. West Virginia Code § 58–5–2 reads as follows:

Any question of law, including, but not limited to, questions arising upon the sufficiency of a summons or return of service, upon a challenge of the sufficiency of a pleading or the venue of the circuit court, upon the sufficiency of a motion for summary judgment where such motion is denied, or a motion for judgment on the pleadings, upon the jurisdiction of the circuit court of a person or subject matter, or upon failure to join an indispensable party, may, in the discretion of the circuit court in which it arises, be certified by it to the supreme court of appeals for its decision, and further proceedings in the case stayed until such question shall have been decided and the decision thereof certified back. The procedure for processing questions certified pursuant to this section shall be governed by rules of appellate procedure promulgated by the supreme court of appeals.

2. Rule 13 of the West Virginia Rules of Appellate Procedure is the rule referenced in West Virginia Code § 58–5–2 with regards to the method for processing certified questions.

be claimed; thus, prior to claiming damages for the "future permanent consequences" of a personal injury, the plaintiff must establish a permanent medical injury resulting from the accident.

For the reasons stated below, this Court disagrees with the conclusion reached by the lower court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The issue of future damages before us has emerged from a personal injury action involving an automobile collision which occurred on September 8, 1999. It is alleged that on that date the car of Faith Woods Cook, defendant below and appellee herein (hereinafter referred to as "Appellee"), collided into the rear of the car of Tifinie Cook.[3] At the time of the accident, Tifinie Cook, plaintiff below and appellant herein (hereinafter referred to as "Appellant"), was a member of the Air National Guard. Appellant filed a negligence suit against Appellee in which Appellant sought to recover, among other damages, future Air National Guard wages and benefits that she allegedly lost as a result of Appellee's negligence. According to Appellant, due to the injuries she sustained in the accident she not only was involuntarily discharged from the Air National Guard but also became ineligible for reenlistment. On July 1, 2002, the lower court granted Appellant's motion for partial summary judgment on the issue of liability. Thereafter, Appellant filed a motion in limine seeking a ruling on whether she could, solely within the context of her claim for future Air National Guard wages and benefits, demonstrate the "future permanent consequences" of her injuries by proving the permanent nature of her military discharge. Syl. Pt. 7, *Jordan v. Bero,* 158 W.Va. 28, 210 S.E.2d 618 (1974). In ruling on Appellant's motion, the lower court concluded that, contrary to Appellant's requested ruling, under West Virginia law proof of a permanent medical injury was an essential prerequisite to sustain a claim for lost future wages and benefits. Nevertheless, the lower court found the question appropriate to certify to this Court

because of its importance to the issues remaining for adjudication in this case. Appellee objected to the certification, contending that the facts involving the matter certified were in dispute. On February 25, 2004, this Court granted review of the certified question.

## II. STANDARD OF REVIEW

■ The record and briefs of the parties fully support Appellee's assertion that the facts surrounding the question certified are largely in dispute. Nevertheless, the relevance of the facts to the resolution of causation and damage matters yet pending before the lower court turns on the legal issue presented in the certified question. As a question of law, we find the question to be within this Court's jurisdiction as authorized by West Virginia Code § 58–5–2. Our "appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*" Syl. Pt. 1, *Gallapoo v. Wal–Mart Stores, Inc.,* 197 W.Va. 172, 475 S.E.2d 172 (1996).

## III. DISCUSSION

### A. Future Damages

■ To place the issue presented in the certified question in proper context, we initially review some basic relevant concepts of compensatory damages. Generally, a tort plaintiff is entitled to all damages proximately caused by a wrongdoer's actions. "The basic goal in awarding damages is to fairly and adequately compensate the plaintiff for the injuries and losses sustained." *Flannery v. U.S.,* 171 W.Va. 27, 29, 297 S.E.2d 433, 435 (1982). Thus, "the aim of compensatory damages is to restore a plaintiff to the financial position he/she would presently enjoy but for the defendant's injurious conduct." *Kessel v. Leavitt,* 204 W.Va. 95, 187, 511 S.E.2d 720, 812 (1998).

■ To fulfill this overarching goal of making an injured party whole, compensatory damages include not only actual losses but also the anticipated losses due to the future effects of an injury caused by negligence.

---

**3.** Although the parties share the same surname, we are advised that they are not related.

Future damages are "awarded to an injured party for, among other things: (1) Residuals or future effects of an injury which have reduced the capability of an individual to function as a whole man; (2) future pain and suffering; (3) loss or impairment of earning capacity; and (4) future medical expenses." Syl. Pt. 10, *Jordan v. Bero*, 158 W.Va. 28, 210 S.E.2d 618 (1974). In syllabus point seven of *Jordan* we formally adopted the test, first articulated in *Wilson v. Fleming*, 89 W.Va. 553, 109 S.E. 810 (1921), for recovering future damages:

> To form a legal basis for recovery of future permanent consequences of the negligent infliction of a personal injury, it must appear with reasonable certainty that such consequences will result from the injury; contingent or merely possible future injurious effects are too remote and speculative to support a lawful recovery.

We further explained in syllabus point nine of *Jordan* that "[t]he permanency or future effect of any injury must be proven with reasonable certainty in order to permit a jury to award an injured party future damages." 158 W.Va. at 29, 210 S.E.2d at 623.

### B. Certified Question Clarified

■ The question as submitted refers to the future damages at issue as lost wages. The parties interchangeably employ the terms "impaired earning capacity," "lost earning opportunity" and "lost future income or wages" to characterize the damages involved.[4] In actuality, the relief sought by Appellant as the plaintiff below is compensation for future wages *and* benefits lost as a result of her discharge from the Air National Guard. In order to accurately represent the future damages being sought, we invoke our discretion to reframe the question as certified[5] in the following way:

> Does *Jordan v. Bero*, 158 W.Va. 28, 210 S.E.2d 618 (1974), require a personal injury plaintiff to demonstrate through medical evidence the permanent deterioration of her physical condition where her claim for lost future income depends not on the lasting effect of her injuries, but rather on whether the defendant's tortious conduct was a proximate cause of plaintiff losing forever a specific employment opportunity?

The court below answered the question as certified in the affirmative based on the conclusion that *Jordan* and subsequent relevant cases require that future damage claims be premised on "a permanent medical injury resulting from the accident." We proceed with an examination of the issues of permanence and type of injury which this response raises.

### C. Permanence

Appellant essentially asserts that a permanent injury is not a prerequisite to a recov-

---

4. These various legal theories have different meanings and require different types of proof. Circuit courts have routinely managed cases invoking these theories although we have not had occasion to engage in a comparative analysis of these theories in a single case or to assign precise definitions to each theory. Given the fact that a complete record involving the relevant theories has not been developed to date in the instant case, the opportunity to address these distinctions is again not before us. We simply note that one authority explains the theories in the following way:

> The injured plaintiff may recover either specific [future] income loss ... *or* loss of earning capacity.... [As to the former,] [t]he plaintiff is entitled to recover any kind of income lost as a result of injury, including the value of fringe benefits. ... An estimate of lost earning capacity is not an estimate of specific present or future wage loss; it is rather an estimate of lost present ability to work in appropriate occupations, now and in the future.... Thus one who is earning the same wages after the injury as before might still have a loss of earning capacity, representing a likely diminution in earnings at some point in the future, or an increase in the effort required to keep earnings at the same level. In a real sense it may even be said that even if capacity for work remains the same but injury reduces the chance of being hired, the plaintiff has a measurable loss [of opportunity].

2 Dobbs, *Law of Remedies* § 8.1(2), 361–63 (2d ed.) (1993) (footnotes omitted) (emphasis in original).

5. "When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in *W. Va.Code*, 51–1A–1, *et seq.* and *W. Va.Code*, 58–5–2 [1967], the statute relating to certified questions from a circuit court of this State to this Court." Syl. Pt. 3, *Kincaid v. Mangum*, 189 W.Va. 404, 432 S.E.2d 74 (1993).

ery for future damages and instead asserts that the test set forth in *Jordan* allows recovery for future permanent consequences of the negligent infliction of a personal injury if it appears reasonably certain that such permanent consequences will result from the injury. Appellee claims that a permanent injury to the person is a long-standing precondition to an award of future lost earnings. We find neither argument entirely representative of the relevant law as announced in *Jordan* or as applied in cases following *Jordan*.

We return to the previously cited language of syllabus point seven of *Jordan* for the test governing future damage claims:

> To form a legal basis for recovery of future permanent consequences of the negligent infliction of a personal injury, it must appear with reasonable certainty that such consequences will result from the injury; contingent or merely possible future injurious effects are too remote and speculative to support a lawful recovery.

158 W.Va. at 29, 210 S.E.2d at 622–23. It is plain that the test for future damages as set forth in *Jordan* requires that the *"consequences* of the negligent infliction of a personal injury" be demonstrated with a reasonable degree of certainty. *Id.* (emphasis added). The consequences to which the reasonable certainty standard is to be applied are later characterized in syllabus point nine of *Jordan* as "[t]he permanency or future effect of any injury." 158 W.Va. at 29, 210 S.E.2d at 623. Our subsequent opinions employed an abbreviated alternative reference to permanent consequence as permanent injury. *See e.g. Adkins v. Foster*, 187 W.Va. 730, 733, 421 S.E.2d 271, 274 (1992) (stating that *Jordan* requires proof of "permanent injury and reasonable degree of certainty" as prerequisites to recovery for impairment of earning capacity). Unfortunately, this alternative characterization has apparently led to confusing the permanency of the consequence with the permanency of the negligently inflicted injury forming the basis of the lawsuit.

As we have noted, the relevant language in *Jordan* clearly focuses on the consequences resulting from the negligent act rather than the nature of any injury sustained as a result of that act. This approach to future damage claims is in full accord with the overall goal of compensatory damages—providing an injured person the opportunity to be placed in as similar a position as he or she would have been but for the negligent conduct. Were we to follow Appellee's suggestion that the direct injury sustained due to negligence must be a permanent injury, we would be undermining this long-accepted principle of recovery of damages. By limiting recovery of future damages to such permanent injuries, we would be denying the possibility of recovering future damages in situations where a person suffers an injury with temporary or short-duration medical impairment that may readily be proven to have a permanent or reasonably certain future consequence based on some level of recovery within a specific time period. To be made whole with respect to future damages in such cases, a plaintiff would be compelled to delay a trial on the issue of damages until all loss had been actually sustained. Such a resolution is manifestly impractical if not wholly impossible. It can be said that the very reason for the theory of allowing future damages to be proven with reasonable certainty arises from the need to avoid such impractical and impossible results while still providing a whole recovery.

██ Contrary to the conclusion reached by the lower court, the test applicable to future damages in *Jordan* has never required that the injury sustained by a plaintiff in a personal injury case be permanent in nature or result in permanent impairment to the person in order to qualify for recovery of future damages. Rather, the test governing future damages as set forth in syllabus points seven and nine of *Jordan v. Bero*, 158 W.Va. 28, 210 S.E.2d 618 (1974), requires that either the negligently inflicted injury or its direct consequences be proven to a reasonable degree of certainty to have a lasting, permanent future effect.

D. Nature of the Negligently Inflicted Injury

By answering the certified question in the affirmative, the lower court implies that the

*Jordan* test applicable to future. damages requires a personal injury plaintiff to demonstrate through medical evidence the permanent deterioration of a medical condition. We conclude that the lower court unduly relies on the permanent physical nature of an alleged physical injury in describing the type of evidence needed to establish a reasonable degree of certainty under the future damages test of *Jordan.*

The test formulated in *Jordan* grew out of a case involving a serious physical injury. In *Jordan,* a ten-year-old had sustained a severe and permanent brain injury after being hit by a car while riding his bicycle. We were called upon in *Jordan* to delineate the quantum of evidence necessary to meet the established reasonable certainty standard to support a jury instruction on the issue of damages for lasting and permanent effects of an injury suffered at the hands of a negligent defendant. Our decision in *Jordan* necessarily focused on the medical evidence needed to prove a permanent physical injury in the context of an earnings capacity claim because of the plaintiff's reliance on his physical injury as the reason for his impaired earning capacity. Likewise, subsequent cases on the propriety of awards for loss or impairment of earning capacity have frequently discussed the medical permanency of a physical injury because a physical injury, at least in part, was the reason for loss of future earnings. *See e.g. Gerver v. Benavides,* 207 W.Va. 228, 530 S.E.2d 701 (1999) (severe groin pain resulting from medical malpractice affected future earning capacity); *Liston v. Univ. of West Virginia Bd. of Trustees,* 190 W.Va. 410, 438 S.E.2d 590 (1993)(permanent injury to right arm and elbow from slip and fall accident claimed to have affected future earning capacity); *Adkins v. Foster,* 187 W.Va. 730, 421 S.E.2d 271 (1992) (permanency of cervical strain and exacerbation of preexisting depression resulting from car accident forming basis of loss of earning capacity claim). Nevertheless, this Court has never definitively stated that a physical injury, with permanent effects, is a prerequisite for recovery of future damages based on lost future income or lost earning capacity. Rather, the test we adopted in syllabus point nine of *Jordan,* focuses on a heightened level of proof which is necessary to support a jury award for any future damages. In applying the same future damages test to a claim involving medical expenses we said: "Although *Jordan* and cases dealing with similar subject matter sometimes speak in terms of compensating a plaintiff for the anticipated cost of treating a 'permanent injury,' we have never held that lasting physical harm is an absolute prerequisite for recovery of future medical expenses." *Bower v. Westinghouse Elec. Corp.,* 206 W.Va. 133, 139, 522 S.E.2d 424, 430 (1999).

Appellee contends that *Bower* is inapplicable since the present discussion involves future damages to earnings rather than damages in the form of future medical expenses. The standard *as announced* in *Jordan* thirty years ago is applicable to *any* type of future damage claim. Consequently, we would have to ignore or modify that standard in order to arrive at the conclusion Appellee proposes. Moreover, to find that the legal sufficiency test of *Jordan* limits awards in future lost income cases to permanent physical injury would once again serve to defeat the primary purpose of compensatory damage awards. If we were to follow the course urged by Appellee and uphold the lower court's limitation on the pursuit of a future damage claim for loss of income, we would also be eliminating an injured party's ability to be made whole for such things as a negligently caused intellectual impairment, permanent or temporary, affecting loss of income. No such limitation appears in *Jordan.* Furthermore, we tacitly recognized mental impairments as a basis for claiming lost future earnings when we applied the *Jordan* principles in the later case of *Adkins v. Foster.*

Instead of categorically eliminating recovery of future damages for any particular type or degree of injury, this Court chose in *Jordan* to sanction future damage awards for any injury so long as it is shown with reasonable certainty that the future permanent consequence of that injury will result. Whether that consequence involves a physical or mental impairment, lost opportunity, permanent discharge from the military or other matter is irrelevant as long as the evidence establishes by a reasonable degree

of certainty that it is a permanent consequence of the negligent act of the defendant. To ward against speculative, abstract or purely theoretical claims, the trial court bears the responsibility for examining the evidence in each case in order to withhold such flawed claims from jury consideration.

■■■ Likewise, *Jordan* did not attempt to prescribe the specific type of evidence needed to support every conceivable kind of injury which may occur as a result of the negligent acts of a defendant. Instead of defining such specific standards, or only determining the standards applicable to the facts of the case then before it, this Court in *Jordan* set forth an evidentiary paradigm governing future damages in syllabus point eleven of *Jordan* reads:

> Where an injury is of such a character as to be obvious, the effects of which are reasonably common knowledge, it is competent to prove future damages either by lay testimony from the injured party or others who have viewed his injuries, or by expert testimony, or from both lay and expert testimony, so long as the proof adduced thereby is to a degree of reasonable certainty. But where the injury is obscure, that is, the effects of which are not readily ascertainable, demonstrable or subject of common knowledge, mere subjective testimony of the injured party or other lay witnesses does not provide sufficient proof; medical or other expert opinion testimony is required to establish the future effects of an obscure injury to a degree of reasonable certainty.

158 W.Va. at 30, 210 S.E.2d at 623. This flexible model may be readily applied to cases involving the consequences of any type of negligently inflicted injury, and by its terms does not limit relevant evidence of reasonable certainty to medical evidence in all circumstances. For instance, we surmise from the arguments in the case before us that verifying the lasting consequence of discharge from the military without reenlistment opportunity would require Appellant to produce expert testimony regarding military regulations and procedures as familiarity with such consequences are not obvious or within common knowledge.[6]

■■■ Appellee expresses serious concern that allowing future damage claims on a basis other than permanent physical impairment will promote excessive awards for trivial injuries. This concern might be justified if plaintiffs in personal injury cases only had to demonstrate a lasting future effect of a negligently inflicted injury in order to be successful in obtaining an award for loss of future income or earning capacity. One authority addressing the further proof needed in future lost income and future earning capacity claims states:

> Evidence in the wage loss claim reflects loss of specific opportunities, such as those presented by an existing job. Proof typically shows past wage and future prospects in the job, coupled with proof that the plaintiff *can no longer work or can work only part time.* Evidence in the lost capacity claim, on the other hand, often focuses on the nature of the injury and the kind of *diminished working capacity* such an injury tends to cause. In such cases, there may be no evidence at all of past earnings or of specific jobs the plaintiff might have held in the future.

2 Dobbs, *Law of Remedies* § 8.1(2), 364 (2d ed.) (1993) (footnotes omitted) (emphasis added). It is clear then that a plaintiff seeking damages for future losses in the form of specific income or capacity to earn a living, including lost opportunity,[7] must show how

---

6. Our narrow example is not intended to imply that medical evidence is not relevant to the full development of this case.

7. Jurisdictions which have decided claims alleging lost opportunity generally analyze the claims as they would an impairment to lost or diminished earning capacity. *See* William H. Danne, Jr., *Admissibility and Sufficiency, in Personal Injury or Wrongful Death Action, of Evidence as to Earnings or Earning Capacity from Position or Field* *for Which Person Has Not Fulfilled Education, Training, or like Eligibility Requirement,* 2002 A.L.R., 5th 25 (2002–2004) (available in 2002 WL 31829068). We refrain from further comment about a claim based on lost opportunity, saving that discussion for another day when the issue is properly presented for our review on a fully developed record accompanied by the reasoning of the lower court.

his or her economical situation has been impeded. Such proof is necessary to assure adherence to the principle underlying compensatory damages: placing the injured party in the same, *not better,* financial position he or she would have been in but for the negligent act. Requiring proof of this nature is also in keeping with the doctrine of avoidable consequences, which "states that a party cannot recover damages flowing from consequences that the party could reasonably have avoided." 22 Am.Jur.2d Damages § 340 (2003) (footnote omitted). The purpose of the avoidable consequences doctrine, applied in the context of claims for lost future income or diminished earning capacity, is "to reduce the recovery by amounts the plaintiff actually did earn or could reasonably have earned." 2 Dobbs, *Law of Remedies* § 8.1(2), 369 (1993). We embraced the spirit of the doctrine of avoidable consequences in *Adkins v. Foster,* 187 W.Va. 730, 421 S.E.2d 271 (1992), when we advised that:

> [P]rudent plaintiff's counsel would seek to introduce vocational evidence in addition to medical evidence ... to assist the jury in ascertaining the extent and permanency of the plaintiff's alleged inability to engage in gainful employment. Similarly, prudent defense counsel would also present such evidence in order to assist the jury in determining whether the plaintiff would be capable of some other future employment which might mitigate the damages for loss of future earning capacity.

*Id.* at 735, 421 S.E.2d at 276. Accordingly, the prediction of loss of future earnings must be established with reasonable certainty before an award for impaired future earnings can be made. The trial court is well equipped to test the evidence actually adduced on the issue against any contention that such evidence is too speculative, abstract or theoretical to support the claim asserted. To counter or reduce a lost earnings claim, it may also be shown under the facts of a given case that a plaintiff is able to accept suitable alternative employment but has failed to do

so. *See* Stein on Personal Injury Damages 3d § 18:17: *Avoidable Consequences and Duty to Mitigate* (1997).

## IV. Conclusion

Acknowledging that we do not have the benefit of a fully developed record in approaching the subject raised by the certified question, we appropriately leave application of the legal conclusions we have reached to the capable hands of the trial court. In summary, we have determined that a permanent physical impairment is not the only type of lasting consequence which will sustain an award of future damages, including future earnings, under the standards set forth in *Jordan.* The relevant evidence of a lasting or permanent consequence is determined by the nature of the consequence and does not necessarily involve medical evidence; nevertheless, the relevant evidence in all cases must establish the lasting or permanent consequence to a reasonable degree of certainty.

For the reasons stated herein, we answer the certified question, as reformulated, in the negative.

Certified Question Answered.

Justice DAVIS concurs and reserves the right to file a concurring opinion.

DAVIS, Justice, concurring:

In response to the certified question presented in this case, the majority opinion has held that a negligently injured plaintiff may recover for the loss of future wages that are a direct consequence of an injury, without showing that the injury itself was permanent. I concur in this result. I have chosen to write separately because I believe the majority opinion should have explained the technical differences between the legal theories of "lost earning opportunity," "lost or impaired earning capacity," and "lost future income or wages."[1] While I recognize that many courts tend to use the language of these legal concepts interchangeably,[2] my concern is

---

1. I should point out that the original majority opinion that was filed in this case was withdrawn following the filing of my initial concurring opinion. As a result of some modifications made to the new majority opinion, my concurring opinion likewise has been modified.

2. *See, e.g., Morris v. Milby,* 301 Ill.App.3d 224, 234 Ill.Dec. 509, 703 N.E.2d 121 (1998) (involv-

that due recognition be given to the fact that the concepts require different types of proof.

### A. Lost or Impaired Earning Capacity

The ultimate relief sought by the plaintiff in this specific case is compensation for wages and benefits lost as a result of being discharged from the Air National Guard, due to her apparent, non-permanent, injury. Under these specific facts, the circuit court believed that the "lost or impaired capacity" doctrine, announced in *Jordan v. Bero*, 158 W.Va. 28, 210 S.E.2d 618 (1974), precluded recovery because there was no permanent injury. The circuit court was correct in finding that the doctrine of "lost or impaired capacity" requires a permanent injury. However, as I will demonstrate, another legal theory permits recovery when no permanent injury exists.

In *Jordan*, a ten year old child was hit by a car while riding his bicycle. The child sustained permanent brain damage due to the accident. As a result of the brain damage, a jury awarded the child compensation for lost or impaired earning capacity. One of the issues the Court had to decide in *Jordan* was "whether sufficient evidence of future consequences from the negligent act of the defendant was proven to lawfully permit the jury to make an award for the future effects of the permanent injury." *Jordan*, 158 W.Va. at 52, 210 S.E.2d at 634.

As an initial matter, *Jordan* held

that to form a basis of a legal recovery for the future permanent consequences of the wrongful infliction of a personal injury, it must appear with reasonable certainty that such consequences will result from the injury. Contingent or merely possible future injurious effects are too remote and speculative to support a lawful recovery.

158 W.Va. at 42, 210 S.E.2d at 629 (citation omitted). The decision next held that "[t]he prognosis of the future effect of permanent injuries ... must be elicited from qualified experts, evaluated first by the court and then, if found sufficient, considered by the jury upon proper instruction." *Jordan*, 158

W.Va. at 49, 210 S.E.2d at 633. *Jordan* then went on to provide a non-exhaustive list of examples of the types of claims that permit recovery for future damages:

Future damages are those sums awarded to an injured party for, *among other things:* (1) Residuals or those future effects of an injury which have reduced the capability of an individual to function as a whole man; (2) future pain and suffering; (3) *loss or impairment of earning capacity;* and (4) future medical expenses.

158 W.Va. at 52, 210 S.E.2d at 634 (emphasis added). The *Jordan* Court concluded:

There was ample evidence of permanency of an injury which was obscure only in its final and ultimate effects. Lay and medical evidence adduced in support of the plaintiff's case demonstrated that in addition to the permanent injury, plaintiff had suffered deleterious effects from the automobile accident from which a jury may have reasonably inferred he will so suffer in the future and that such suffering and residuals will effect this capacity to function as a whole man in the future.

158 W.Va. at 58–59, 210 S.E.2d at 638.

I have labored thus far in presenting facts from the *Jordan* opinion in an effort to underscore two critical points. First, *Jordan* was concerned with future damages in the context of a *permanent injury*. Second, because *Jordan* involved a permanent injury, the law applicable to the claim was the legal theory of "lost or impaired earning capacity." *Jordan* recognized, as have other courts, "that impairment-of-earning capacity is recoverable only upon proof that an injury is permanent." *Wheeler v. Bennett*, 312 Ark. 411, 849 S.W.2d 952, 955 (1993). *See also Myrick v. Stephanos*, 220 Ga.App. 520, 472 S.E.2d 431, 434 (1996) ("Recovery for 'lost earning capacity' is ... a separate element of damages recovery of which physical injury to the plaintiff resulting in a permanent or total physical disability is the essential element."); *Brown v. Guiter*, 256 Iowa 671, 128 N.W.2d

ing lost earning opportunity claim, but court using concept of impaired earning capacity); *Williams v. Commonwealth Edison Co.*, 232 Ill. App.3d 85, 173 Ill.Dec. 135, 596 N.E.2d 759

(1992) (applying concept of lost future income to earning capacity claim); *Burgess v. C.F. Bean Corp.*, 743 So.2d 251 (La.Ct.App.1999) (same).

896, 902 (Iowa 1964) ("[L]oss of earning capacity is an element of permanent injury."); *Snow v. Villacci*, 754 A.2d 360, 363 (Me.2000) ("A lost earning capacity claim requires evidence that the injury caused by the wrongdoer has caused an ongoing impairment that has diminished or eliminated the plaintiff's ability to earn income."); *Gary v. Mankamyer*, 485 Pa. 525, 403 A.2d 87, 89 (1979) ("Under Pennsylvania law, a plaintiff seeking recovery for [lost earning capacity] must show two things: (1) a permanent injury and (2) a total impairment of earning power."); *Leak v. U.S. Rubber Co.*, 9 Wash.App. 98, 511 P.2d 88, 93 (1973) ("Where a permanent injury has been established ... plaintiff ... is entitled to compensation for impairment of earning capacity."). Indeed, in at least two prior decisions of this Court "[w]e have explained that 'impairment of earning capacity is a proper element of recovery when two elements have been proven: permanent injury and reasonable degree of certainty of the damages.'" *Craighead v. Norfolk and W. Ry. Co.*, 197 W.Va. 271, 281, 475 S.E.2d 363, 373 (1996) (quoting *Adkins v. Foster*, 187 W.Va. 730, 733, 421 S.E.2d 271, 274 (1992)). Further, as explained in *Johnson v. LSU Medical Center*,

> Lost earning capacity is loss of a person's potential and is not necessarily determined by actual loss. The plaintiff need not be working or even in a certain profession to recover such an award. What is being compensated is the plaintiff's lost ability to earn a certain amount and she may recover such damages even though she may never have seen fit to take advantage of that capacity.

867 So.2d 884, 887 (La.Ct.App.2004) (citation omitted). In other words, the legal theory of lost or impaired earning capacity "compensate[s] a plaintiff for loss of capacity to earn income as opposed to actual loss of future earnings." *W.R. Grace & Co.-Conn. v. Pyke*, 661 So.2d 1301, 1302 (Fla.Dist.App.Ct.1995). *See also Brazoria County v. Davenport*, 780 S.W.2d 827, 832 (Tex.App.1989) ("Recovery for loss of earning capacity as a measure of damages in a personal injury suit is not recovery of actual earnings but, rather, recovery for the loss of the capacity to earn money.").

**B. Lost Future Income or Wages**

In the context of the instant case, the legal theory which permits recovery of future damages for a non-permanent injury is that of "lost future income or wages." Courts are in general agreement that "[a]n award of damages for loss of future earnings is appropriate when the plaintiff proves that she will lose wages in the future but has sustained no injury that will impair her earning capacity." *Generali–U.S. Branch v. Martinez*, 2004 WL 740021, at *4 (Ark.Ct.App.). *See also Auto–Owners Ins. Co. v. Tompkins*, 651 So.2d 89, 91 (Fla.1995) ("[A] permanent injury is not a prerequisite to recovering [lost future income or wages."); *Olariu v. Marrero*, 248 Ga.App. 824, 549 S.E.2d 121, 124 (2001) ("A recovery for 'loss of future earnings' is available where there is proof of loss of definite earnings that would have been received in the future but for an injury, even though the injury is not permanent."). To establish a "lost future income or wages" claim, "the evidence must show: (1) the amount of wages lost for some determinable period; and (2) the future period over which wages will be lost." *Generali–U.S. Branch*, 2004 WL 740021, at *4 (citing *Peterrie Transp. Servs., Inc. v. Thurmond*, 79 Ark.App. 375, 90 S.W.3d 1 (2002)). Unlike a claim for lost or impaired earning capacity, a claim for "lost earnings cannot be recovered by a person who is not employed at the time of injury[.]" *Jensen v. Osburn*, 74 Or.App. 7, 701 P.2d 790, 791 (1985).

The distinction between impaired earning capacity and lost future income was summarized in *Kubista v. Romaine* as follows:

> It is generally well recognized that there are normally two comp[o]nents or aspects which should be considered in attempting to measure the detriment an injured plaintiff has sustained when by reason of the injury he is unable to continue earning his prior wages. The first and most obvious component is frequently called "lost time," "lost wages," or "lost earnings." That is, it is clear that if an injury [is not permanent], the plaintiff should be entitled to compensation for regular wages lost because of the disability. Secondly, when it becomes apparent that an injury was such

that it occasioned a permanent disability, or permanent diminution of the ability to earn money, then the plaintiff should be entitled to compensation for what is generally called "impaired earning capacity."

14 Wash.App. 58, 538 P.2d 812, 815 (1975).

### C. Lost Earning Opportunity

A claim for lost earning opportunity is distinct from a claim for impaired earning capacity and lost future income. The Supreme Judicial Court of Maine addressed the issue of lost earning opportunity in *Snow v. Villacci*, 754 A.2d 360 (Me.2000). The plaintiff in *Snow* was involved in an automobile accident. When the accident occurred the plaintiff was near the end of a twenty-five month training program, conducted by his employer, to become a financial consultant. As a result of the plaintiff's injuries from the accident, he had to take time off from the training program. When he eventually returned to the program he failed to pass all of its requirements. The plaintiff filed a lawsuit over the injuries received in the accident and also asserted a claim for lost earning opportunity. Under the latter theory, the plaintiff contended that the interruption in his training caused by the accident was the reason why he failed the program. A verdict was rendered in favor of the plaintiff. The defendants appealed and assigned error to the trial court's denial of their partial summary judgment motion on the issue of lost earning opportunity.

The appellate court in *Snow* rejected the defendants' contention that no award could be obtained for lost earning opportunity. The court described a claim for lost earning opportunity as follows:

Unlike a loss of earning capacity, an earning opportunity may be lost when, during the period of disability caused by the defendant's negligence, a specific earning opportunity arises which could otherwise have been utilized by the plaintiff, but is lost because of a disability caused by the negligence of the defendant.

One type of lost earning opportunity may occur when a person who is in an education or training program is injured and is unable to complete the program on schedule. If the injury resolves and the trainee is capable of returning to the program, the trainee may nonetheless recover damages representing the lost opportunity to obtain the improved income during the period of time in which the trainee would have begun to earn at the new level but remains in the training program.

*Snow*, 754 A.2d at 364. In affirming the trial court's denial of partial summary judgment, the appellate court crafted a test for establishing a claim for lost earning opportunity:

Accordingly, recovery may be had for the loss of an earning opportunity if the claimant proves, by a preponderance of the evidence, that: (1) the opportunity was real and not merely a hoped-for prospect; (2) the opportunity was available not just to the public in general but to the plaintiff specifically; (3) the plaintiff was positioned to take advantage of the opportunity; (4) the income from the opportunity was measurable and demonstrable; and (5) the wrongdoer's negligence was a proximate cause of the plaintiff's inability to pursue the opportunity.

*Id.* at 365. *See also Morris v. Milby*, 301 Ill.App.3d 224, 234 Ill.Dec. 509, 703 N.E.2d 121 (1998) (holding that plaintiff may seek damages for lost opportunity to obtain promotion due to injury at time promotion was to be considered).

In summation, I believe the majority opinion correctly answered the certified question. However, I believe the majority opinion could have better served the bench and bar by explaining the technical differences between a claim for lost earning opportunity, lost or impaired earning capacity, and lost future income or wages.

Accordingly, I respectfully concur in the majority opinion.