2007 ME 3

**Jordan I. KOBRITZ**

v.

**Ellen L. SEVERANCE.**

Supreme Judicial Court of Maine.

Argued: Oct. 13, 2006.

Decided: Jan. 9, 2007.

R. Lee Ivy, Brendan P. Rielly (orally), Jensen Baird Gardner & Henry, Portland, for plaintiff.

Charles E. Gilbert III (orally), Julie D. Farr, Gilbert & Greif, P.A., Bangor, for defendant.

Bruce C. Mallonee, Rudman & Winchell, Bangor (Estate of Nathan Kobritz); Jon A. Haddow, Farrell, Rosenblatt & Russell, Bangor (Estate of Samuel Kobritz), for other parties-in-interest.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] Ellen L. Severance appeals from a decision of the Superior Court (Penobscot County, *Mead, J.*) granting summary judgment to Jordan I. Kobritz and issuing a declaratory judgment in his favor. The court declared that the 1982 deed, which conveyed real estate from Samuel John Kobritz (known as John) and Nathan Kobritz to Severance, is a nullity and that the property reverts to the Estate of Morris Kobritz. Severance contends that (1) the statute of limitations on Jordan Kobritz's claim against her has run, and (2) the Superior Court erred in finding that she was not a bona fide purchaser and in declaring her title to the property null and void. We vacate the judgment because the court did not view the facts in the light most favorable to Severance and because there are genuine issues of material fact.

## I. BACKGROUND

[¶ 2] This dispute concerns a parcel of real estate, located in Bangor and referred to as the "Kobritz farm." The property was owned by Morris Kobritz, who died in 1980. A few years before his death, Morris was sued by Northeast Bank, and the bank obtained a prejudgment attachment against the Kobritz farm, which was recorded in the registry of deeds. In 1977, the Superior Court granted Northeast Bank a judgment against Morris in the amount of $30,906.25. Thereafter, the court twice extended the attachment on the farm, and the extensions were duly recorded in the registry of deeds.

[¶ 3] In January 1982, Morris's will was approved and allowed by the Penobscot County Probate Court, and his two sons, John and Nathan, became co-personal representatives of the estate. Morris's will bequeathed the bulk of his estate to John and Nathan, but it provided that the farm could not be sold for twenty-five years.

[¶ 4] Also in January 1982, Northeast Bank assigned to Jordan Kobritz, who is the grandson of Morris and the son of Nathan, all of the bank's rights, title, and interest in its judgment against Morris. A few months later, Jordan filed a claim in the Probate Court against the estate in the amount of $47,925.70, representing the judgment amount plus interest that Jordan was owed as the assignee of Northeast Bank. Jordan obtained a writ of execution from the Superior Court for the amount, and the writ was recorded in the registry of deeds on August 4, 1982. Jordan Kobritz's claim in the Probate Court against the Estate of Morris Kobritz was not disallowed by John and Nathan as co-personal representatives of the estate. On November 4, 1982, Jordan's attorney signed a discharge of the attachment against the Kobritz farm and a discharge of the lien, and both discharges were recorded in the registry of deeds on November 8, 1982.

[¶ 5] On November 24, 1982, John and Nathan, in their capacities as co-personal representatives of the estate, deeded the Kobritz farm to themselves in a deed of distribution, which stated that they were the devisees entitled to the distribution of the property described in the deed. On the same day, John and Nathan transferred the Kobritz farm to Ellen Severance. Both deeds were duly recorded.

[¶ 6] Severance worked for the Kobritz family from 1957 to 2003 in various capacities, which included caring for Morris before his death and working at the family's restaurant. Severance alleges that at the time the Kobritz farm was deeded to her, the Kobritz family owed more than $70,000 to her and her family for money that had been borrowed and for her unpaid wages.

[¶ 7] Nathan lived on the Kobritz farm until his death in 2003. Severance never lived on the farm. The facts are disputed

as to payment of the costs associated with the property. Jordan claims that Nathan paid such costs, including taxes, until his death. Severance claims that the costs and taxes were paid from the rental units on the property and from her wages.

[¶ 8] Jordan Kobritz was not informed about the conveyance of the farm to Severance when it occurred in 1982, and he did not learn of it until 2003, after Nathan's death, when Jordan's sister, Sharon Kobritz, informed him. Sharon learned about the conveyance in 1993 when John died.

[¶ 9] In 2005, Jordan Kobritz, in his individual capacity and in his capacity as a special administrator of the Estate of Morris Kobritz, filed this action against Severance and against the personal representatives of the estates of John and Nathan. In his complaint, Jordan claimed that the conveyance of the farm from John and Nathan in their capacities as personal representatives of Morris's estate to themselves personally, while an unsatisfied claim was pending against the estate, constituted constructive fraud against Jordan as a creditor of the estate. Jordan also alleged that Nathan, John, and Severance conspired to unlawfully transfer the farm out of Morris's estate. Jordan sought a declaratory judgment to void the conveyance by John and Nathan to themselves and to Severance. Severance counterclaimed to quiet title and to obtain a declaratory judgment that she is the owner of the farm.

[¶ 10] Jordan and Severance both filed motions for summary judgment. The personal representatives of the estates of John and Nathan did not respond to the motions. The court granted Jordan's motion and declared that the deed from John and Nathan conveying the farm to themselves is void and that the deed from John and Nathan to Severance is a nullity. The court ordered that all rights, title, and interest in the farm revert back to the Estate of Morris Kobritz. In arriving at this declaration, the court found that by conveying the property in contravention of Morris's will, John and Nathan had defrauded Jordan and breached the fiduciary duty they owed to Jordan as a creditor of the estate. The court found that the farm was the only viable asset of Morris's estate. Although the court stated that it could not find that Severance entered into a conspiracy with John and Nathan, it found that she was not a bona fide purchaser because she had notice of Morris's will and Jordan's claim against the estate, and, therefore, she had notice of the fraud by John and Nathan. The court also found that the farm was conveyed to Severance without consideration. The court held that the fraud stayed the running of the statute of limitations, and the statute did not begin running until Jordan discovered the fraud in 2003. Only Severance has appealed the judgment.

## II. DISCUSSION

### A. Standard of Review

[¶ 11] We review a grant of summary judgment de novo.[1] *Brawn v. Oral Surgery Assocs.*, 2003 ME 11, ¶ 15, 819 A.2d 1014, 1022. "When reviewing a grant of a summary judgment, we consider the facts in the light that is most favorable to the party against whom judgment was entered to determine whether the court committed an error of law." *Francis v. Stinson*, 2000 ME 173, ¶ 37, 760 A.2d 209, 217. "We give the party opposing summary judgment the benefit of any reasonable

---

1. Jordan argues that we should review the Superior Court's findings for clear error. Although the Superior Court made findings, the case was decided on motions for summary judgment. Therefore, we apply the standard of review for summary judgment.

inferences that can be drawn from the presented facts." *Perkins v. Blake,* 2004 ME 86, ¶ 7, 853 A.2d 752, 754.

## B. Statute of Limitations

[¶ 12] The statute of limitations for all actions involving the recovery of land is twenty years. 14 M.R.S. § 801 (2005).[2] The conveyances at issue here occurred in 1982, and Jordan Kobritz did not file this action to recover the farm until 2005, that is, twenty-three years later.[3] He relies on 14 M.R.S. § 859 (2005), which extends the statute of limitations by six years in cases where the cause of action is fraud or the cause of action has been fraudulently concealed from the plaintiff.[4]

■ [¶ 13] We have articulated the rationale behind section 859 as "legislative recognition of the fact that dating accrual of an undiscoverable cause of action from the time of injury works an injustice on injured plaintiffs." *Anderson v. Neal,* 428 A.2d 1189, 1192 (Me.1981). The statute of limitations begins to run, pursuant to section 859, "when the existence of the cause

of action or fraud is discovered or should have been discovered by the plaintiff in the exercise of due diligence and ordinary prudence." *Francis,* 2000 ME 173, ¶ 58, 760 A.2d at 220 (quoting *Westman v. Armitage,* 215 A.2d 919, 922 (Me.1966)).

■ [¶ 14] The court concluded that Nathan and John defrauded Jordan Kobritz. Severance has not argued that the court erred in concluding that Nathan and John committed fraud.[5] Jordan averred and the court found that he did not have actual notice of the conveyances of the farm that constituted the fraud until after Nathan died in 2003.[6] Severance contends that Jordan had constructive notice of the conveyances because they were recorded in the appropriate registry of deeds in 1982 and because in the exercise of due diligence and ordinary prudence Jordan would have discovered the conveyances.

■ [¶ 15] While a creditor is not required to periodically search the registry of deeds "if no circumstance has transpired which should put him on inquiry,"

---

2. Title 14 M.R.S. § 801 (2005) states:
 No person shall commence any real or mixed action for the recovery of lands, or make an entry thereon, unless within 20 years after the right to do so first accrued, or unless within 20 years after he or those under whom he claims were seized or possessed of the premises, except as provided in this subchapter.

3. The complaint does not allege a cause of action under the Uniform Fraudulent Transfer Act, 14 M.R.S. §§ 3571–3582 (2005). The statute of limitations under the Act is six years from the date of the fraudulent transfer or one year from the time the transfer was or reasonably could have been discovered by the claimant. 14 M.R.S. § 3580. The parties have not raised or discussed the statute of limitations under the Act.

4. Title 14 M.R.S. § 859 (2005) provides:
 If a person, liable to any action mentioned, fraudulently conceals the cause thereof from the person entitled thereto, or

if a fraud is committed which entitles any person to an action, the action may be commenced at any time within 6 years after the person entitled thereto discovers that he has just cause of action, except as provided in section 3580.

5. Jordan's complaint alleged that Nathan and John committed constructive fraud against Jordan. "[C]onstructive fraud may be found where it can be demonstrated that one party has obtained some benefit from the other through undue influence or breach of a fiduciary or confidential relation." *Gaulin v. Jones,* 481 A.2d 166, 168 (Me.1984).

6. The court also found that the fraud by John and Nathan "was effectively concealed during their lifetimes until 2003 when their actions were revealed to the rest of the family." However, Jordan's sister averred that she learned of the conveyances in 1993.

*Westman,* 215 A.2d at 922, a creditor is required to exercise due diligence. If there are facts that would alert a creditor to inquire about the property, then the creditor must do so, and if a reasonable inquiry would have led to the discovery of the fraud, the creditor is charged with notice of the fraud. We have said that "[o]ne who has knowledge of such facts as would lead a fair and prudent man, using ordinary caution, to make further inquiries is chargeable with notice of the facts which by ordinary diligence he would have ascertained." *Dumais v. Gagnon,* 433 A.2d 730, 736 (Me.1981) (quotation marks omitted). Similarly, the Minnesota Supreme Court said: "[T]he means of discovery are equivalent to actual discovery, and ... a party must be deemed to have discovered the fraud when, in the exercise of proper diligence, he could and ought to have discovered it." *Duxbury v. Boice,* 70 Minn. 113, 72 N.W. 838, 839–40 (1897) (cited in *Westman,* 215 A.2d at 923).

■■■ [¶ 16] Whether a party has exercised due diligence as required to toll the statute of limitations in cases of fraud is ordinarily considered to be a question of fact. *See, e.g., Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 196, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997) (stating that whether the plaintiff has exercised due diligence is a fact-based question); *Aldrich v. McCulloch Props., Inc.,* 627 F.2d 1036, 1042 (10th Cir.1980) ("The question of whether a plaintiff should have discovered the basis of his suit under the doctrine of equitable tolling does not lend itself to determination as a matter of law."); *Robertson v. Seidman & Seidman,* 609 F.2d 583, 591 (2d Cir.1979) (stating that due diligence "depend[s] on inferences drawn from the facts

of each particular case" and "[w]hen conflicting inferences can be drawn from the facts ... summary judgment is inappropriate"); *but see Shelton v. Fiser,* 340 Ark. 89, 8 S.W.3d 557, 562 (2000) (stating that "although the question of fraudulent concealment is normally a question of fact that is not suited for summary judgment, when the evidence leaves no room for a reasonable difference of opinion, a trial court may resolve fact issues as a matter of law") (quotation marks omitted). We conclude that in this case whether proper diligence was exercised so as to toll the statute of limitations under section 859 is a question of fact.

■■ [¶ 17] The Superior Court, however, concluded as a matter of law that Jordan "had no reason to regularly examine the registry of deeds to make sure that his family members had not conveyed the sole asset of the estate." Because the issue of diligence to toll the statute of limitations is a factual one and because judgment was granted to Jordan on a motion for summary judgment, the court was required to view the facts and inferences therefrom favorably to Severance.

[¶ 18] We conclude that the facts and inferences viewed most favorably to Severance compel a conclusion that there are disputed facts regarding whether Jordan should have discovered the fraud by his father and uncle within twenty years of its occurrence through the exercise of due diligence and ordinary prudence. Both the deed of distribution and the deed conveying the farm to Severance were publicly recorded in 1982. Jordan's father was living on the farm. Jordan was an attorney practicing in Bangor in 1982.[7] Jordan's sister learned of the conveyance to

---

7. According to Jordan's affidavits in support of his statement of material facts, he was practicing law in Bangor at the time of the assignment from Northeast Bank and he lived in Arizona at the time of his father's death, but neither the statement of material facts nor his affidavits state when he left Bangor.

Severance in 1993. Based on these facts, a fact-finder might rationally infer that the reasonably prudent creditor who believes that a parcel of real estate is the only security for the debt, is unlikely to let twenty-three years go by without checking on the soundness of the security.

[¶ 19] The issue of whether the statute of limitations has run is dependent upon a determination of whether Jordan should have discovered the fraud within six years of the filing of the action. Because that is a matter of disputed fact, the court erred in granting summary judgment to Jordan.

■ [¶ 20] Although the summary judgment must be vacated because of the disputed fact regarding when the fraud should have been discovered, we briefly discuss the other issues raised by Severance on appeal for which she contends that the court erred in not assessing the facts and inferences in the light most favorable to the party opposing the summary judgment. The first issue concerns whether Severance was a bona fide purchaser of the farm. The court found that Severance was not a good faith purchaser because the conveyance of the farm to her by Nathan and John was without consideration and because she had constructive notice of Jordan's claim against the estate and constructive notice of the provisions of the will.

[¶ 21] Viewing the facts in the light most favorable to Severance, there was evidence of consideration for the conveyance to her. Severance had worked for the Kobritz family for approximately forty-six years in several capacities, including caring for Morris. Severance's statement of additional material facts and supporting affidavit say that she and her family were owed $70,000 in loan repayments by the Kobritz family, she was owed back wages, and the farm was deeded to her in exchange for a release from the debt. The court read Severance's statements as saying that only Nathan Kobritz owed her money, and it concluded that while Nathan may have owed Severance $70,000, Morris's estate did not owe her money. It was on this basis that the court concluded that Severance had not furnished consideration.

[¶ 22] However, viewing the facts in the light most favorable to Severance, she and her family were owed money by the Kobritz family, which includes Morris, Nathan, and John. Furthermore, since she received the farm from Nathan and John, and not from Morris's estate, whether or not the estate owed her money is immaterial. Viewing the facts in the light most favorable to Severance, there is a genuine factual dispute regarding consideration.[8]

■ [¶ 23] With regard to whether Severance had constructive notice of Jordan's claim, the court concluded that because Jordan had filed a claim on the estate with the Probate Court, Severance had constructive notice of his claim. Jordan argues that the filing of the claim and the will made them matters of public record, and, therefore, Severance was on constructive notice as to them. We are not persuaded that, as a matter of law, the filing of a claim in the Probate Court against an estate places a grantee, who is conveyed real estate by an heir of the estate, on constructive notice of a debt against the estate. Furthermore, constructive notice of a debt by the estate,

---

8. Although there is old precedent that payment of an antecedent debt is not sufficient consideration to constitute a good faith purchase for value when the seller obtained the property by fraud, *see Titcomb v. Wood,* 38 Me. 561, 563 (1854), the issue of whether payment of a preexisting debt would constitute valid consideration was not raised by the parties or discussed by the court.

without additional knowledge of the capacity of the estate to pay the debt, is not notice of fraud, particularly in this case where the lien on the real estate had been discharged.

 [¶ 24] We are also not persuaded that, as a matter of law, the filing of a will in the probate court, places a grantee, who is conveyed property by an heir of the estate, on constructive notice that the will has a clause prohibiting the sale of the estate's property. Jordan alleges that Severance had actual notice of the clause in the will prohibiting the sale of the farm. However, Severance denies the fact and states that she does not remember if she knew about the clause in 1982, when the farm was conveyed to her. She acknowledges that she became aware of the clause in 1983 when she was named a party in a suit by Northeast Bank concerning the farm. There is a genuine issue of fact as to whether Severance had actual notice of the clause at the time of the conveyance.

[¶ 25] Because of the factual issues regarding when Jordan should have discovered the fraud, the consideration furnished by Severance, and Severance's actual notice of the will clause, summary judgment was not appropriate.

The entry is:

Judgment vacated. Case remanded for further proceedings consistent with this opinion.