MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:     2016 ME 131
Docket:       Ken-15-234
Argued:       February 10, 2016
Decided:      August 16, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

DRILLING & BLASTING ROCK SPECIALISTS, INC.

v.

PAUL RHEAUME

JABAR, J.

[¶1]  Drilling & Blasting Rock Specialists, Inc., (DBRS) appeals from a summary judgment entered in favor of Paul Rheaume in the Superior Court (Kennebec County, *Mullen, J.*) on Rheaume's statute of limitations defense to DBRS's complaint for intentional and negligent misrepresentation.  Viewing the summary judgment record in the light most favorable to DBRS, we conclude that the record reflects a factual dispute regarding the commencement of the limitations period applicable to the intentional misrepresentation claim.  We therefore vacate the summary judgment in part and remand for adjudication of this factual issue.  With respect to the negligent misrepresentation claim, we discern no dispute of material fact and

conclude that the trial court correctly entered summary judgment in Rheaume's favor. We accordingly affirm the judgment in part.

## I. FACTUAL BACKGROUND

[¶2] The following facts are established by the parties' statements of material fact and the evidence referred to therein, are viewed in the light most favorable to the nonprevailing party, and are undisputed unless otherwise noted. *See Remmes v. Mark Travel Corp.*, 2015 ME 63, ¶ 3, 116 A.3d 466.

[¶3] Rheaume owned T.W. Dick Company, Inc., (TWD) from 1995 to 2009. On March 9, 2006, Rheaume, acting as president of TWD, executed and delivered a promissory note and mortgage to Robert McKee in consideration for McKee conveying to TWD a parcel of real property located on Brunswick Avenue in Gardiner. McKee's mortgage on the Brunswick Avenue property was recorded in the Kennebec County Registry of Deeds the following day.

[¶4] In May 2006, two months after TWD acquired the Brunswick Avenue property, Rheaume contacted DBRS's president, Timothy Purington, to ask whether DBRS might be interested in purchasing the Brunswick Avenue property from TWD. In August 2006, TWD conveyed the Brunswick Avenue property to DBRS by a warranty deed that did not mention the outstanding mortgage to McKee and represented that the property was free of all

encumbrances.  At the same time, Timothy Purington, acting as president of DBRS, executed and delivered a promissory note and mortgage to TWD in consideration for the conveyance by TWD.

[¶5]  Rheaume did not tell anyone associated with DBRS that McKee held a first mortgage on the property or that TWD was obligated to make payments on the note held by McKee for a period of fifteen years.  TWD was represented by counsel in the transaction and paid for a title search of the Brunswick Avenue property prior to the closing, but did not disclose the results of any title search to DBRS.

[¶6]  At the closing, DBRS was not represented by counsel, and Timothy Purington, as president of DBRS, signed a "Notice of Representation," agreeing that if DBRS had "any legal questions" regarding the sale of the property it "should discuss them with independent counsel."  DBRS relied upon the representations contained in the warranty deed with respect to the absence of encumbrances on the Brunswick Avenue property.  It would not have gone through with the transaction if it had known that McKee held a first mortgage on the property.

4

[¶7]  According to Rheaume, DBRS contacted him about one week after the sale and requested a "bill of sale" from McKee.  DBRS denies this statement, and asserts that it did not learn of the McKee mortgage until 2013.

[¶8]  At some point after DBRS acquired the Brunswick Avenue property, TWD defaulted on the promissory note and mortgage held by McKee and McKee sought to foreclose on the property now owned by DBRS.  DBRS asserts that it has been frustrated in its plan to use the Brunswick Avenue property for storage, and has incurred damages as a result of the McKee mortgage and foreclosure.

## II.  PROCEDURAL HISTORY

[¶9]  In October 2013, DBRS filed a complaint against Rheaume and TWD, seeking compensatory and punitive damages for negligent and intentional misrepresentation regarding the representation of the absence of encumbrances on the Brunswick Avenue property.  In August 2014, after a hearing on damages, the court entered a judgment against TWD, awarding DBRS damages in the amount of $180,925, plus interest and costs.  The judgment did not resolve DBRS's claims against Rheaume.

[¶10]  In October 2014, Rheaume moved for summary judgment, contending that DBRS could not establish the elements of its claims and that

those claims were barred by the six-year limitations period generally applicable to civil actions. *See* 14 M.R.S. § 752 (2015). In opposition, DBRS argued that its misrepresentation claims were not subject to the general civil limitations period prescribed by section 752, but were instead governed by an extended limitations period for claims grounded in fraud, which tolls the limitations period until "6 years after the person entitled [to such an action] discovers that he has just cause of action." 14 M.R.S. § 859 (2015). DBRS argued that the extended limitations period of section 859 would have commenced in 2013—when it first discovered McKee's mortgage on the Brunswick Avenue property—and not at the time of the transaction in 2006, because it had relied upon the warranty deed's free-of-encumbrance clause and had no duty to investigate whether the property was encumbered.

[¶11] Rheaume replied that section 859 was inapplicable to DBRS's negligent misrepresentation claim because that claim was not "grounded in fraud." Rheaume also argued that, even if the extended limitations period of section 859 applied to DBRS's claims, that period would not have been tolled by operation of the statutory discovery rule. Quoting *Kobritz v. Severance*, 2007 ME 3, ¶ 13, 912 A.2d 1237, Rheaume asserted that the "limitations [period] begins to run, pursuant to section 859, when the existence of the

cause of action or fraud . . . should have been discovered by the plaintiff in the exercise of due diligence and ordinary prudence." (Quotation marks omitted.) Rheaume further asserted that DBRS would have discovered the McKee mortgage if it had searched the registry at the time of the sale, and that DBRS's failure to search the registry rendered its claims untimely as a matter of law.

[¶12]  In April 2015, the court entered a summary judgment in Rheaume's favor, concluding that DBRS's negligent misrepresentation claim was time-barred by the limitations period of section 752, and that its intentional misrepresentation claim was time-barred by the limitations period of section 859.  DBRS appealed to us.  *See* 14 M.R.S. § 1851 (2015).

### III.  DISCUSSION

[¶13]  The question presented is whether the trial court erred in entering summary judgment based on Rheaume's statute of limitations defense to DBRS's claims that Rheaume should be held personally liable for intentionally and negligently misrepresenting that there were no encumbrances on the Brunswick Avenue property.

A.    Standard of Review

[¶14]  We review the entry of a summary judgment de novo, viewing the evidence and any reasonable inferences that may be drawn therefrom in

the light most favorable to the nonprevailing party to determine whether the summary judgment record supports the conclusion that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Brawn v. Oral Surgery Assocs.*, 2003 ME 11, ¶ 15, 819 A.2d 1014. "We will vacate a summary judgment if there is a genuine issue of material fact or [if] the trial court committed a legal error." *Id.* (citation omitted). "We will affirm the judgment if the record reflects that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law." *Francis v. Stinson*, 2000 ME 173, ¶ 37, 760 A.2d 209 (quotation marks omitted). "A fact is material if it has the potential to affect the outcome of the suit, and a genuine issue of material fact exists when a fact-finder must choose between competing versions of the truth, even if one party's version appears more credible or persuasive." *Angell v. Hallee*, 2014 ME 72, ¶ 17, 92 A.3d 1154 (quotation marks omitted).

[¶15] When a defendant asserts in a motion for summary judgment the affirmative defense of the expiration of a limitations period, the defendant bears the burden of assembling a record of undisputed facts demonstrating that the plaintiff's action is time-barred by the applicable statute of limitations. *Baker v. Farrand*, 2011 ME 91, ¶ 31, 26 A.3d 806. To survive a

limitations defense raised at summary judgment and proceed to adjudication of the facts, a plaintiff, either with or without statements of additional material fact, *see* M.R. Civ. P. 56(h)(2), bears the burden of demonstrating that the summary judgment record generates a factual dispute about the running of the limitations period, *see Brawn v. Oral Surgery Assocs., P.A.*, 2006 ME 32, ¶ 10, 893 A.2d 1011. "When the plaintiff fails to set forth facts showing that there is a genuine issue for trial on a statute of limitations defense, summary judgment may be granted on the ground that the applicable statute of limitations has run." *Id.*

[¶16] Which limitations period applies to a given claim is a matter of statutory construction, reviewed de novo. *See Dowling v. Salewski*, 2007 ME 78, ¶ 10, 926 A.2d 193. Whether a claim is barred by the applicable limitations period is a question of law, *McKinnon v. Honeywell Int'l, Inc.*, 2009 ME 69, ¶ 9, 977 A.2d 420, but whether a plaintiff has exercised sufficient diligence to avoid a finding that it "should have discovered" the cause of action earlier for purposes of determining when the limitations period on a fraud claim commenced is "ordinarily . . . a question of fact," *Kobritz*, 2007 ME 3, ¶ 16, 912 A.2d 1237.

B.      The Timeliness of DBRS's Intentional Misrepresentation Claim

[¶17]   The statute of limitations applicable to actions for fraud and fraudulent concealment provides as follows:

> If a person, liable to any action mentioned, fraudulently conceals the cause thereof from the person entitled thereto, or if a fraud is committed which entitles any person to an action, the action may be commenced at any time within 6 years after the person entitled thereto discovers that he has just cause of action, except as provided in section 3580.[1]

14 M.R.S. § 859.   The parties stipulate, and we agree, that section 859 prescribes the limitations period that applies to DBRS's intentional misrepresentation claim because that claim is a variant of a cause of action for fraud,[2] which action will lie where a person

> (1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff.

*Sherbert v. Remmel*, 2006 ME 116, ¶ 4 n.3, 908 A.2d 622 (quotation marks omitted).

---

[1]  Title 14 M.R.S. § 3580 (2015) concerns fraudulent transfers and is inapplicable here.

[2]  *See Goody v. Md. Cas. Co.*, 25 P.2d 1045, 1046 (Idaho 1933) ("A false and fraudulent representation, by one who assumed to have personal knowledge, to the purchaser of real estate that there is no encumbrance thereon, and upon which representation the purchaser relies, and acts to his injury, will sustain an action for the tort . . . ." (quotation marks omitted)).

[¶18]   Even before Maine separated from Massachusetts to assume independent statehood, the common law afforded an extended limitations period for actions sounding in fraud.  *See First Mass. Tpk. Corp. v. Field*, 3 Mass. (3 Tyng) 201, 207 (1807).  The Maine Legislature first codified an extended limitations period for fraud claims in 1841.  *See Appeal of Deake*, 80 Me. 50, 56, 12 A. 790 (1888) (discussing R.S. ch. 146, § 18 (1841)).  That early statute contained a discovery rule nearly identical to the discovery rule of section 859.  *Compare* R.S. ch. 146, § 18, *with* 14 M.R.S. § 859.  Pursuant to the text of section 859, a six-year time-bar begins to run on a fraud claim when the plaintiff "discovers" the claim.  14 M.R.S. § 859.  This discovery rule exists to protect a plaintiff from the injustice of a time-bar that begins to run while a claim remains undiscoverable.  *Kobritz*, 2007 ME 3, ¶ 13, 912 A.2d 1237.

[¶19]   We have long interpreted this discovery rule as a provision that prevents the commencement of the limitations period until "the existence of the cause of action or fraud is discovered or should have been discovered by the plaintiff in the exercise of due diligence and ordinary prudence."  *Westman v. Armitage*, 215 A.2d 919, 922 (Me. 1966) (citing *Penobscot R.R. Co. v. Mayo*, 67 Me. 470, 473 (1878); *Appeal of Deake*, 80 Me. at 56, 12 A. 790).  In this case, DBRS asks us to abandon the requirement of due diligence imposed on a

plaintiff who wishes to reap the benefits of section 859, characterizing the due diligence requirement as a "vestige of contributory negligence" that conflicts with a plaintiff's burden of proving the justifiable reliance element of a fraud claim in a manner that is both "illogical and inequitable." We reject DBRS's assertion that the due diligence burden is either illogical or inequitable, and we decline its invitation to overrule our longstanding precedents.

[¶20] To establish the justifiable reliance element of a fraud claim, a plaintiff need not investigate the truth or falsity of the representation at issue unless the plaintiff "knows that the statement is false or the falsity is obvious."[3] *Francis*, 2000 ME 173, ¶ 39, 760 A.2d 209. A failure to investigate—in the absence of knowledge or obvious falsity—is justified "not only when an investigation would involve an expenditure of effort and money out of proportion to the magnitude of the transaction, but also when it could be made without any considerable trouble or expense." *Letellier v. Small*, 400 A.2d 371, 375 (1979) (quotation marks omitted). The policy behind the justifiable reliance element reflects fundamental principles of tort culpability, which assign greater blame to one who intentionally or recklessly makes a

---

[3] Although a plaintiff's contributory negligence was once a bar to recovery in an action for fraud, *see Crossman v. Bacon & Robinson Co.*, 119 Me. 105, 109, 109 A. 487 (1920), Maine law has long recognized that a plaintiff's negligence is no defense to a defendant's fraud, *see Letellier v. Small*, 400 A.2d 371, 375 (1979).

false representation than to one who negligently relies on such a representation. *See id.*

[¶21] Just as the elements of a fraud claim are defined by reference to principles of tort law, the contours of the extended statute of limitations applicable to a fraud claim reflect a balance between competing limitations purposes in the context of an action for fraud.

[¶22] To the extent that due diligence requires action by the plaintiff that would not be required for the justifiable reliance element of a fraud claim (which may not require any action on the plaintiff's part), any distinction is fully justified by the principles of tort and equity at play. We therefore uphold the due diligence doctrine and apply it to the facts of this case below.

1. Summary Judgment on the Issue of Due Diligence

[¶23] DBRS contends that the evidence compels a conclusion that it exercised due diligence sufficient to prevent the commencement of the limitations period until the time that it actually discovered the misrepresentation in the warranty deed because it was entitled to rely upon the deed and had no reason to disbelieve the representations in it. In the alternative, DBRS argues that the summary judgment record establishes a genuine dispute of material fact as to whether it acted reasonably by relying

on the warranty deed. Rheaume responds that there is no dispute that the limitations period began to run at the time of the transaction in 2006, when DBRS failed to exercise due diligence by checking the registry to verify the representations in the warranty deed.

[¶24] "Whether a party has exercised due diligence as required to toll the statute of limitations in cases of fraud is ordinarily considered to be a question of fact." *Kobritz*, 2007 ME 3, ¶ 16, 912 A.2d 1237. However, when uncontroverted evidence leaves no room for a reasonable difference of opinion as to whether the plaintiff exercised due diligence and indisputably demonstrates that the plaintiff should have discovered the fraud, the issue may be resolved at summary judgment as a matter of law. *See Klehr v. A.O. Smith Corp.*, 87 F.3d 231, 235 (8th Cir. 1996); *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1509-10 (11th Cir. 1988); *Kramas v. Sec. Gas & Oil, Inc.*, 672 F.2d 766, 770 (9th Cir. 1982).

[¶25] In *Kobritz*, we considered the meaning of "due diligence" in the context of a fraudulent conveyance of land when the conveyance had been recorded in the registry of deeds. 2007 ME 3, ¶ 14, 912 A.2d 1237. There, recognizing that the issue of due diligence is a factual question, and noting

that there were disputed issues of material fact, we vacated a summary judgment. *Id.* ¶ 25.

[¶26]  The case of *Westman*, 215 A.2d 919, presents another example of the difficulty of deciding the issue of due diligence as a matter of law.  In that case a creditor claimed that he had been defrauded by a recorded conveyance of the debtor's assets and the debtor asserted that the creditor's complaint was time-barred.  *Id.* at 920.  In vacating a summary judgment entered in the debtor's favor, we expressed the view that "recordation of a fraudulent conveyance will not alone suffice to give constructive notice of the fraud such as will start the running of the statute of limitations."  *Id.* at 922.  We indicated that a creditor should not be affirmatively tasked with the burden of examining public records for a debtor's fraud unless a circumstance had transpired which would place a reasonable creditor on inquiry notice that a fraud might have occurred. *Id.*

[¶27]  Many other courts employ the same concept of inquiry notice that we used in *Westman* to define the standard of diligence that is sufficient to prevent the commencement of the limitations period on a fraud claim.  *See, e.g., Brumbaugh v. Princeton Partners*, 985 F.2d 157, 162 (4th Cir. 1993) ("The . . . standard of due diligence requires reasonable investigation of the

possibility of misrepresentation once an individual has been placed on inquiry notice of wrongdoing."); *L.C.L. Theatres, Inc. v. Columbia Pictures Indus., Inc.*, 566 F.2d 494, 497 (5th Cir. 1978) ("One will not be charged with knowledge of fraud merely because he has had the opportunity or power to investigate the fraud; *he must be cognizant of facts that would have caused an ordinary, reasonable person to investigate.*"). The First Circuit Court of Appeals has stated that a plaintiff's duty of due diligence is triggered by storm warnings of the possibility of fraud. *Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 128 (1st Cir. 1987) (quotation marks omitted).

[¶28] This case involves allegations that the seller of real property defrauded a purchaser by misrepresenting that the property was free of encumbrances. Unlike the plaintiffs in *Kobritz* and *Westman*, the plaintiff here could have discovered the misrepresentation in the deed by checking the registry once, at the time of the property sale, or at any time thereafter. Central recording systems have long provided a simple, well-understood method of organizing and maintaining searchable documents to determine whether title to property is clear. The purpose of the registry, however, is to protect bona fide purchasers for value from unrecorded property interests, not to protect those who engage in fraud or to invalidate the interest of a

party to a property transaction vis-à-vis the other party to that transaction. *Letellier*, 400 A.2d at 376 n.4; 14 Richard R. Powell, Powell on Real Property § 82.01[3] (Michael Allan Wolf, ed. 2005). The doctrine of constructive notice that applies in the law of real property does not transfer to the field of tort law to "shield a defendant from liability for fraudulent misrepresentation," *Letellier*, 400 A.2d at 376 n.4, or to otherwise start the limitations period running on the time for bringing a fraud claim as a matter of law.

[¶29] Though searching the registry is arguably the most basic form of diligence that could be undertaken by a purchaser in a property transaction, when a warranty deed has been given in which the owner warrants against *all* encumbrances, a failure to conduct a title search at the registry will not, as a matter of law, constitute a failure to exercise due diligence for purposes of preventing the commencement of the limitations period on a fraud claim. Whether a plaintiff exercised due diligence depends on the factual circumstances of a given case, and remains a question of fact even when the fraud at issue involves misrepresentations in a warranty deed to real property. Such a factual issue may be resolved at summary judgment only when the undisputed facts and reasonable inferences, viewed in the light most

favorable to the nonprevailing party, leave no room for a reasonable difference of opinion.

[¶30] When viewed in the light most favorable to DBRS, the record in this case permits conflicting inferences as to whether DBRS should, in the exercise of due diligence, have discovered the fraud within six years of its occurrence. The McKee mortgage was recorded in the Kennebec County registry before DBRS acquired the property, and DBRS's transaction with TWD was a property transfer from a seller that was represented by counsel to a buyer that was not represented by counsel. Based on these facts, a fact-finder could rationally infer that a reasonably prudent property purchaser would verify the accuracy of the representations in the seller's warranty deed. However, the record contains no indication that DBRS was on notice of any facts that would necessarily have caused a reasonable purchaser to undertake an independent investigation, and therefore a fact-finder could infer that DBRS acted reasonably by relying upon the warranty deed. Pursuant to its negotiations with TWD, DBRS obtained a warranty that the property was free of encumbrances, and thereby obtained an enforceable assurance that the property was not encumbered. The record does not establish that DBRS was aware of any facts that would necessarily have

caused a reasonable purchaser to doubt the accuracy of the representations made by Rheaume and set forth in the deed.

[¶31] In light of these conflicting inferences, we conclude that the record establishes a genuine dispute of material fact as to whether DBRS exercised diligence sufficient to prevent the commencement of the limitations period of section 859. The question of whether receipt of a free-of-encumbrances representation in a warranty deed is sufficient to satisfy the duty of due diligence and prevent the commencement of the limitations period on a fraud claim is a factual issue that should be decided by a jury. We therefore vacate the summary judgment on DBRS's intentional misrepresentation claim, and remand for further proceedings consistent with this opinion.

C.    The Timeliness of DBRS's Negligent Misrepresentation Claim

[¶32] The second issue presented by this appeal is whether the summary judgment record establishes that Rheaume is entitled to judgment on his statute of limitations defense to DBRS's claim for negligent misrepresentation. DBRS argues that the trial court committed an error of law in concluding that its negligent misrepresentation claim is time-barred by

the limitations period of section 752, and does not benefit from the extended limitations period of section 859. We disagree.

[¶33] The plain language of section 859 extends only to causes of action sounding in fraud or fraudulent concealment.[4] 14 M.R.S. § 859. As noted in the preceding discussion, fraud is defined in part as a false representation of material fact made with knowledge of the representation's falsity or in reckless disregard of the representation's truth or falsity. *See Barr v. Dyke*, 2012 ME 108, ¶ 16, 49 A.3d 1280. By contrast, a negligent misrepresentation claim does not require proof of intentional or reckless fault and thus does not sound in fraud. *See Chapman v. Rideout*, 568 A.2d 829, 830 (Me. 1990) (explaining that a misrepresentation will be actionable pursuant to a theory of negligent misrepresentation if the defendant "fails to exercise reasonable care or competence in obtaining or communicating the information") (quotation marks omitted). For this reason, such a claim does not benefit from the extended statute of limitations set forth in section 859.

---

[4] In its appellate brief, DBRS concedes that its claims are not based upon allegations of fraudulent concealment.

The entry is:

> Summary judgment on the negligent misrepresentation claim affirmed. Summary judgment on the intentional misrepresentation claim vacated. Remanded for further proceedings consistent with this opinion.

---

**On the briefs:**

David M. Lipman, Esq., and Peter B. Bickerman, Esq., Lipman, Katz & McKee, P.A., Augusta, for appellant Drilling and Blasting Rock Specialists, Inc.

James A. Billings, Esq., and Matthew D. Morgan, Esq., McKee Billings, P.A., Augusta, for appellee Paul Rheaume

**At oral argument:**

Peter B. Bickerman, Esq., for appellant Drilling and Blasting Rock Specialists, Inc.

Matthew D. Morgan, Esq., for appellee Paul Rheaume

Kennebec County Superior Court docket number CV-2013-276