STATE OF MAINE                          SUPERIOR COURT
KENNBEC, SS                             CIVIL ACTION
                                        DOCKET NO. RE-18-30


DENNIS AND DAWN DUBE,
        Plaintiffs

                                        **ORDER ON MOTION FOR**
                                        **SUMMARY JUDGMENT**

        V.


MAINE-LY LAKEFRONT
PROPERTIES, LLC, and
TIMOTHY S. O'BRIEN,
        Defendants


This matter is before the court on the Motion for Summary Judgment filed by Defendants Maine-ly Lakefront Properties, LLC., and Timothy O'Brien.[1] Oral argument on the motion was held on December 13, 2019.

## BACKGROUND

This action arises out of a real estate transaction between Denis and Dawn Dube (Dubes) and Timothy O'Brien (O'Brien). O'Brien and his wife purchased the property, located in South China, Maine, in 2005 to use as their personal camp. (Def's SMF ¶3). In 2013, O'Brien transferred the property to Maine-Ly Lakefront Properties, LLC (MLP), an LLC O'Brien formed for the purpose of either renting or

---

[1] The court has also reviewed and considered the Dubes' Objection to the Expert Witness Designations submitted by MLP and O'Brien. The court denies the "Objection" to the expert witness designation at this time, subject to reconsideration at the time of trial.

selling the property. (SMF ¶ 4-7). Because O'Brien is the sole member of MLP, and because it was formed solely to facilitate the sale/rental of the camp, MLP does not conduct any independent business. (SMF ¶ 8). The O'Brien's decided to sell the property because they were looking to purchase a new camp and had no reason to keep the old one. (SMF ¶ 10, 11).

Around Spring 2017, the Dubes began looking for a camp in Maine to purchase, and visited the O'Brien's property twice, first in June 2017, and again in July. (SMF ¶ 14-18). The Dubes had some prior experience in purchasing property; they had purchased a handful of properties in the years prior, namely apartment buildings, and Mr. Dube was familiar with the Registry of Deeds and understood that documents relating to properties are recorded there. (SMF ¶ 12, 13). After visiting the property first in June 2017 with their Broker, Allison Smiley, the Dubes visited the property again in July, this time while the O'Brien's were present. (SMF ¶ 16, 24). During this visit, Mr. Dube spoke briefly with Mr. O'Brien. Mr. Dube states that he asked O'Brien about the property, and that O'Brien stated that he was not going to convey a portion of the land because the Town would not allow such a conveyance. (SMF ¶ 24, 25). Mr. Dube states that this was the extent of their conversation – that O'Brien provided no other information regarding the property. (SMF ¶ 26, 27).

During this second visit, the Dubes also (1) executed an Exclusive Buyer Representation Agreement with Ms. Smiley and (2) initialed two maps, both with arrows pointing towards portions of the property that stated language similar to "ROW will be conveyed to neighbor." (SMF ¶ 20-22). Mr. Dube indicated that he understood the maps to mean that "part of the property was going to be conveyed to a neighbor." (SMF ¶ 23). Mrs. Dube also believes that Ms. Smiley informed her by July 1, 2017, that the property was subject to an easement or right of way, and that Ms. Smiley probably told her the encumbrance was a "walking and docking

2

easement." (SMF ¶ 28). Mrs. Dube also remembers telling Mr. Dube about this easement around the same time that she learned of it from Ms. Smiley. (SMF ¶ 29). Neither of the Dubes asked any further questions about the easement, and they had no further discussions with anyone involved about the easement. (SMF ¶ 30, 31).

On or about July 8, 2017, the Dubes made an offer to purchase the property for $175,000, even though Mr. Dube thought that offer was a little high. (SMF ¶ 32-33). This offer was accepted the next day. (SMF ¶ 35). Paragraph 17 of the fully executed purchase agreement included a clause that required submitting all disputes to mediation; a failure to abide would result in the complainant paying the other parties' attorney fees if they lost in court. (SMF ¶ 36). At closing, the parties signed a number of documents, including one entitled a "Survey Affidavit." (SMF ¶ 71, 72). At the closing, Mr. O'Brien is alleged to have signed this Survey Affidavit under oath, which stated, in relevant part, that "[t]he undersigned has allowed no easements, rights of way, continuous driveway usage, drain, sewer, water, gas or oil pipeline or other rights of passage to others over the premises above described and has no knowledge of such adverse rights." (Survey Affidavit, Pl.'s Exhibit E). It is the court's understanding that a signed version of this Survey Affidavit has not been located.

The title commitment the Dubes received included an exceptions list in Part II of Schedule B, which included a "[w]alking and dock easement granted to Bruce M. Cole and Elizabeth A. Cole by Maine-ly Lakefront Properties, LCC by instrument dated December 22, 2016 and recorded in Book 12517, Page 83." (SMF ¶ 37-40). The Legal description of the parcel also included the clause "[s]ubject to a 25-foot walking easement and dock easement from Maine-ly Lakefront Properties, LLC to Bruce M. Cole and Elizabeth A. Cole, as set forth in Easement dated December 22, 2016, and recorded in the Kennebec County Registry of Deeds in Book 12517, Page 831." (SMF ¶ 46). The Dubes did not ask anyone at closing about

3

the easement, and thought that the clause meant the Coles would only "have the right to have a dock" and to "go back and forth on the property to go to the dock." (SMF ¶ 47, 48, 50). Mr. Dube states that he learned about the full extent of the easement sometime after the closing, after he gained "additional information" from Bruce Cole, and that he learned that the easement was recorded in Book 12517, Page 83, rather than 831. (SMF ¶ 52). Mr. Dube conducted some basic research and found the proper page, and learned of the full extent of the easement, which is significantly more expansive than the Dubes understood it to be. (SMF ¶ 55). The Dubes are not sure of the pecuniary impact that the easement has had, but they believe that the easement decreases the value of the land, and they believe that they are paying extra taxes for land which belongs to them in name only. (SMF ¶ 56-62).

## STANDARD OF REVIEW

"Summary judgment is appropriate where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, referred to in the statements required by subdivision (h) show that there is no genuine issue as to any material fact set forth in those statements and that any party is entitled to judgment as a matter of law.'" *Town of Windham v. Christopher A. Bond*, No. CV-16-94, 2016 Me. Super. LEXIS 108, at *2 (July 13, 2016) (citing M.R. Civ. P. 56(c)). "In examining the statements of material facts submitted pursuant to subdivision (h), [a] genuine issue of material fact exists when the evidence requires a fact-finder to choose between competing versions of the truth." *Arrow Fastener Co. v. Wrabacon, Inc.*, 2007 ME 34, ¶ 15, 917 A.2d 123 (citing *Farrington's Owner's Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504). Even if one party's version of the facts appears significantly more credible and persuasive, summary judgment is inappropriate "if a genuine factual dispute exists that is material to the outcome." *Arrow Fastener*, 2007 ME 34, ¶ 17, 917 A.2d 123; *see also Emerson v. Sweet*, 432 A.2d 784, 787 n.6 (Me. 1981) ("Thus,

4

the failure of proof, not the relative weight assigned to evidence should control the Court's disposition of the motion."). As the Law Court has stated, although summary judgment "is no longer an extreme remedy, it is not a substitute for trial." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18.

## DISCUSSION

The Dubes bring four counts against MLP and O'Brien: Counts I and III allege Misrepresentation and Fraud against MLP and O'Brien, respectively, and Counts II and IV allege unfair trade in violation of the Maine Unfair Trade Practice Act (5 M.R.S.A. § 206 et seq.), also against MLP and O'Brien, respectively.[2] For the reasons outlined below, the court grants the Defendants' Motion for Summary Judgment as to Counts II and IV, but denies it as to Counts I and III.

### Maine Unfair Trade Practices Act

5 M.R.S.A. § 207 states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." In order for an unfair or deceptive act to be actionable under the Maine Unfair Trade Practices Act, the unfair or deceptive act must be "in the conduct of any trade or commerce." *See State v. DeCoster*, 653 A.2d 891, 895-96 (Me. 1995). The UTPA does not apply to all commercial transactions. *See id.* In *DeCoster*, for example, the Law Court quoted the Massachusetts Supreme Judicial Court with approval, stating "[h]owever, broad as this protection is, we believe that the Legislature did not intend the statute to cover employment contract disputes between employers and employees who work in the employer's organization, nor to disputes

---

[2] The Dubes' original complaint also alleged claims against New England Title, LLC, for its role in conducting the title search, and Stewart Title Guaranty Co., (incorrectly referred to as "Stewart Title Guarantee Co." in the caption) for its refusal to pay the Dubes' insurance claim. In an order dated April 22, 2018, the court granted consented-to motions to dismiss those Defendants with prejudice.

5

between members of that organization arising out of the employment relationship." *Id.* at 896 (quoting *Manning v. Zuckerman*, 444 N.E. 2d 1262, 1262 (Mass. 1983)).

In addition to ruling that the UTPA does not apply to employer-employee disputes, the Massachusetts Court also ruled that the UTPA does not apply to strictly private transactions, where neither party is in the business of that transaction. *See Lantner v. Carson*, 373 N.E. 2d 973, 974-75 (Mass. 1978). *Lantner* is particularly relevant to this case, because the transaction there was also a private real estate sale, where none of the parties were in the business of real estate. *Lantner,* 373 N.E. 2d at 974. There, the Massachusetts Supreme Judicial Court ruled that, because the UTPA "must be read to apply to those acts or practices which are perpetrated in a business context," and because the sale of a private house between private, non-business parties was not perpetrated in a business context, the UTPA did not apply. *Id.* at 977.

In *Binette v. Dyer Library Ass'n*, 688 A.2d 898, 907 (Me. 1996), the Law Court addressed the question of whether a non-profit library association, which sold donated property through a broker, was subject to UTPA. The Court held that the association's role in the sale of the property "was limited and equivalent to that of a private homeowner listing a residence for sale with a professional real estate agency." The Court ruled that "[a]s a matter of law, therefore, this isolated transaction . . . does not constitute the conduct of trade or commerce." *Id. See also Begelfer v. Najarian*, 409 N.E. 2d 167, 175-76 (Mass. 1980). *Binette* also noted that both the Massachusetts and the Maine UTPA track the Federal Trade Commission Act, meaning they are interpreted similarly. *Binette*, 688 A.2d at 907. In deciding what transactions take place in a business context, and are therefore protected by the UTPA, the *Binette* Court outlined a number of relevant factors, including "the nature of the transaction, the character of the parties, the activities engaged in by the parties, whether the parties have engaged in similar activities in the past, whether the

6

transaction is motivated by business as opposed to personal reasons, and whether the parties played an active part in the transaction." *Id.*

In addition to the Massachusetts Supreme Court ruling in *Lantner* and the Law Court's holding in *Binette*, at least two decisions from the Superior Court have concluded that UTPA does not apply in a private property transaction outside of a business context. *See Larrabee v. Mooers*, No. CV-88-40, 1988 Me. Super. LEXIS 282, at *6 (Nov. 16, 1988) (Brody, C.J); *Grant v. Martin*, No. CV-85-1234, 1987 Me. Super. LEXIS 14, at *5-6 (Jan. 12, 1987) (Wernick, A.R.J.).

Accordingly, there is ample support for the proposition that the Maine UTPA does not apply to private real estate transactions, like the one in question in this case. Moreover, the factors outlined by the *Binette* Court also suggest that the sale of the O'Brien camp to the Dubes was not in a business context: both parties were private citizens with relatively little experience in real estate transactions (even if O'Brien acted through MLP); the transaction was one isolated purchase unrelated to any larger business scheme; both the O'Briens and the Dubes hired third parties to help with the transaction; the sale of the camp was for the Dubes' private enjoyment, and because the O'Briens had recently purchased a second camp, and not for some business purpose.

Counsel for the Dubes argues that the O'Briens' use of MLP to hold the property and conduct the transaction, and the use of an agent to post the listing online shift the transaction into a business context. The court disagrees. The Law Court in *Binette* stated that "[t]he [Dyer Library] association's role in the sale of the Deering property was limited and equivalent to that of a private homeowner listing a residence for sale with a professional real estate agency. No prima facie evidence on the record establishes that the Dyer Library Association's sale of the Deering property was in a business context." *Binette*, 688 A.2d at 907 (emphasis in original). Like the Dyer Library Association, MLP is not operated to make a profit, even if it

7

is an LLC, where the Dyer Library Association was a non-profit organization. O'Brien formed MLP with the hope that he might be able to rent the camp, before deciding to sell it. MLP has not conducted any other business besides this one transaction, and it served little purpose in the transaction aside from holding the title to the property. In addition, as the Law Court noted, listing an item for sale online, by itself, hardly makes a transaction take place "in a business context." If this were the case, every transaction that occurs between private parties on websites such as Ebay and Craigslist would be protected under the UTPA, certainly not an outcome intended by the Legislature.

For the foregoing reasons, summary judgment is granted to the Defendants on Counts II and IV of the Complaint.

## Misrepresentation and Fraud

Counts I and III allege that MLP and O'Brien "made misrepresentations and omissions of material fact to the Plaintiffs ..." that were "intentional, malicious, and/or negligent."[3] (Compl. ¶¶ 24, 38).

To establish fraudulent misrepresentation, the Dubes must establish five elements: (1) a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff. *Cianchette v. Cianchette*, 2019 ME 87, ¶ 20, 209 A.3d 745; *Me. Eye Care Assoc., P.A., v. Gorman*, 2006 ME 15, ¶ 19, 890 A.2d 707. The elements of fraudulent misrepresentation must be proven by clear and convincing evidence.

---

[3] At oral argument, counsel for the Dubes acknowledged that they were no longer pursuing a claim based on negligent misrepresentation. Accordingly, the court considers any claim for negligent misrepresentation to be abandoned.

8

*Gorman*, 2006 ME 15, ¶ 16; *St. Francis de Sales Fed. Credit Union v. Sun Ins. Co. of N.Y.*, 2002 ME 127, ¶ 26, 818 A.2d 995.

The Law Court has discussed the tort of negligent misrepresentation in the following manner: "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *St. Louis v. Wilkinson Law Offices, P.C.*, 2012 ME 116, ¶ 18, 55 A.3d 443; *Chapman v. Rideout*, 568 A.2d 829, 830 (Me. 1990) (adopting the formulation of the tort as stated in the Restatement (Second) of Torts § 552(1) (1977)).

MLP and O'Brien begin their argument by first contending that the Dubes are legally barred from relying on omissions by O'Brien to make out their fraud and misrepresentation claim. They contend that Maine law requires a fiduciary relationship between the parties in order for an omission to give rise to a misrepresentation claim, meaning that the Dubes cannot rely on any alleged omission by O'Brien to make out their misrepresentation claims. In *Glynn v. Atl. Seaboard Corp.*, 1999 ME 53, ¶ 12, 728 A.2d 117, the Law Court stated that "[w]here a fiduciary relationship exists between the parties, 'omission by silence may constitute the supplying of false information.'" (quoting *Binette*, 688 A.2d at 903). In a dissenting opinion, Justice Alexander expanded on this, stating:

> However, in Maine, fraud is not limited to affirmative false statements of material fact. Fraud, sufficient to toll the statute of limitations, may be committed by a failure to disclose or by silence when there is a duty to disclose. Thus, we have held that fraud is committed by failure to disclose or by silence when the plaintiff proves *in the alternative* (1) an

9

act of concealment of the truth; or (2) a special relationship, such as a confidential or fiduciary relationship, imposing an affirmative duty to disclose; or (3) a statutory duty to disclose – or even find out and disclose – information that a defendant may not have known without the requisite inquiry.

*Dickey v. Vermette*, 2008 ME 179, ¶ 18, 960 A.2d 1178 (Alexander, J., dissenting) (emphasis in original). Finally, only one year after the Law Court decided *Glynn*, it also stated that "[w]hen a plaintiff, as here, 'alleges a failure to disclose rising to the level of a misrepresentation, the plaintiff must prove either (1) active concealment of the truth, or (2) a specific relationship imposing on the defendant an affirmative duty to disclose.'" *McCeechan v. Sherwood*, 2000 ME 188, ¶ 61, 760 A.2d 1068 (quoting *Fitzgerald v. Gamester*, 658 A.2d 1065, 1069 (Me. 1995).

MLP's and O'Brien's reliance on *Glynn* to support this argument is misplaced, however, since *Glynn* spoke specifically about negligent misrepresentation cases. *See Clavet v. Dean*, BCD-CV-2018-04, 2019 Me. Bus. & Consumer LEXIS 35, at *12 (June 3, 2019) (Murphy, J.) ("In other words, in contrast to intentional misrepresentation, active concealment of the truth is insufficient to prove fraud by omission in the context of an action for negligent misrepresentation; a special relationship like a fiduciary duty or statutory duty to disclose must be proven."). Intentional misrepresentation, on the other hand, does not require a special duty or relationship, and can be proven with an omission as long as that omission was actively concealed. *See Oceanic Inn v. Cove*, BCD-RE-14-01, 2014 Me. Bus. & Consumer LEXIS 35, at *10, 11 (April 2, 2014) (Horton, J.) (quoting *Kezer v. Mark Stimson Assocs.*, 1999 ME 184, ¶ 26, 742 A.2d 898 ("To prove fraud by active concealment, the defendant's omission must be an omission of a material fact, and the 'plaintiff must justifiably rely on the omission of the material fact' to his or her damage."). Thus, the lack of any fiduciary relationship between the Dubes

and O'Brien (and MLP) prevents the Dubes from relying on an omission for a negligent misrepresentation claim, but not for a fraudulent misrepresentation claim.

Nevertheless, MLP and O'Brien also advance two additional arguments to support their contention that Counts I and III should be dismissed. First, they argue that Counts I and III should be dismissed because the Dubes cannot establish justifiable reliance on any alleged misrepresentation. Second, they argue that the Dubes cannot establish any actionable pecuniary loss or detriment.

**Justifiable Reliance**

MLP and O'Brien maintain that because the Dubes were aware that there was an easement on a portion of the parcel of land, the Dubes were on notice, actual or inquiry, and should have made further inquiries if they were concerned or had questions about the easement. This is a well-established doctrine in property law, both here in Maine and in other states. *See, e.g., Waxler v. Waxler*, 1997 ME 190, ¶ 11, 699 A.2d 1161 (A failure to "take appropriate steps to clarify doubts concerning title" is a "failure of due inquiry."); *Gagner v. Kittery Water Dist.*, 385 A.2d 206, 207 (Me. 1978) (quoting *Knapp v. Bailey*, 79 Me. 195, 204, 9 A. 122, 124 (1887) ("If a party has knowledge of such facts as would lead a fair and prudent man, using ordinary caution, to make further inquiries, and he avoids the inquiry, he is chargeable with notice of the facts which by ordinary diligence he would have ascertained."); *Devine v. Tierney*, 27 A.2d 134, 136 (Me. 1942). MLP and O'Brien in particular focus on *Gagner*, as the Law Court there dealt with facts similar to the present case.

The Dubes' claims, however, arise in tort, not in property law. The concepts of actual and inquiry notice relate to claims arising in property law, and do not apply to claims arising in tort. "The doctrine of constructive notice that applies in the law of real property does not transfer to the field of tort law to shield a defendant from liability for fraudulent misrepresentation...." *Drilling & Blasting Rock Specialists,*

11

*Inc., v. Rheaume*, 2016 ME 131, ¶ 28, 147 A.3d 824 (internal quotations omitted). The Law Court has stated: "A person who is victimized by a fraudulent misrepresentation is not held to constructive notice of a public record which would have revealed the true facts, as the purpose of the recording acts is to protect bona fide purchasers for value and not those who indulge in fraud." *Letellier v. Small*, 400 A.2d 371, 376 n.4 (Me. 1979) (*quoting Grange Co. v. Simmons*, 203 Cal. App.2d 567, 21 Cal. Rptr. 757, 763 (1962)). *See also Pryor v. Aviola*, 301 A.2d 306 (Del. Super. 1973); *Tuccio v. Lincoln Dev. Corp.*, 27 Conn. Supp. 373, 239 A.2d 69 (1967); Restatement (Second) of Torts, § 540, Comment *b*, Illustration 1 (1977).

During oral argument, counsel for MLP and O'Brien argued that the Dubes' failure to make further inquiries regarding the easement also meant that they failed to present a prima facie case of misrepresentation, as the final element of that claim requires that the plaintiff show that they justifiably relied on the misrepresentation. The justifiable reliance element, however, is not a particularly onerous burden on a plaintiff. "To establish the justifiable reliance element of a fraud claim, a plaintiff need not investigate the truth or falsity of the representation at issue unless the plaintiff 'knows that the statement is false or the falsity is obvious.'" *Rheaume*, 2016 ME 131, ¶ 20 (quoting *Francis v. Stinson*, 2000 ME 173, ¶ 39, 760 A.2d 209). "A failure to investigate – in the absence of knowledge or obvious falsity – is justified 'not only when an investigation would involve an expenditure of effort and money out of proportion to the magnitude of the transaction, but also when it could be made without any considerable trouble or expense.'" *Rheaume*, 2016 ME 131, ¶ 20 (quoting *Letellier*, 400 A.2d at 375). "A party 'may justifiably rely on the fraudulent misrepresentation of [another] … without investigating the truth or falsity of the representation. Reliance is unjustified only if the plaintiff knows the representation is false or its falsity is obvious to him." *Estate of Whitlock*, 615 A.2d 1173, 1176 (Me. 1992) (quoting *Letellier*, 400 A.2d at 376); *see also St. Francis de Sales*, 2002

ME 127, ¶ 29. Nothing in the record persuades the court that the Dubes knew of the falsity of any potential misrepresentation, or that such falsity was obvious. Indeed, given the relatively little contact the Dubes had with the O'Briens, and their assurances at the closing that the easement was not particularly burdensome, the Dubes have met their burden at the summary judgment stage of this case.

## Actionable Loss and Detriment

The final argument raised by MLP and O'Brien is that the Dubes have failed to establish that they suffered any actionable loss or detriment as a result of any potential misrepresentation. In *Jourdain v. Dineen*, the Law Court held that "pecuniary loss is an essential element of a fraud action and that damages for emotional or mental pain and suffering are not recoverable." 527 A.2d 1304, 1307 (Me. 1987).

Although there does not appear to be any uniform standard or threshold for proving pecuniary damages, they cannot be merely speculative or unfounded. *See Snow v. Villaci*, 2000 ME 127, ¶ 13, 754 A.2d 360 ("Damages may not be awarded when the proof is speculative. When the evidence offered to show prospective damages is in the nature of mere guesswork and conjecture, the factfinder will be unable to determine the plaintiff's loss with reasonable certainty.") (internal citations omitted); *see also Carter v. Williams*, 2002 ME 50, ¶ 9, 792 A.2d 1093. "Although damages need not be proved to a mathematical certainty, an award must be supported by some evidence of the value of property damaged or expenses incurred." *Williams v. Ubaldo*, 670 A.2d 913, 917 (Me. 1996) (quoting *Currier v. Cyr*, 570 A.2d 1205, 1210 (Me. 1990)). The failure or inability of the Dubes to speak with any certainty about either the reduction in value to the land that the easement brings upon it, or the extra taxes that they may be paying, is somewhat troublesome, and makes their claim teeter close to being "mere guesswork and conjecture." *Carter*, 2002 ME 50, ¶ 9.

13

This rule, however, seems to go more to the existence of damages, rather than to the specific amount of damages. *See Villaci*, 2000 ME 127, ¶ 14 ("The proposition that some claims may not have a solid evidentiary basis, however, does not lead to the conclusion that such claims will never be presented with a meaningful evidentiary foundation. It does not follow that a difficulty in proof should, as a matter of law, preclude a claim."). A few Maine cases suggest, at least indirectly, that courts are hesitant to dismiss a claim based on speculative damages alone. *Cf. Fitch v. Stanley*, No. CV-04-78, 2005 Me. Super. LEXIS 190, at *7, 8 (Dec. 16, 2005) (Warren, J.) ("Fitch has alleged pecuniary loss here, albeit only in passing .... The court ... will not dismiss the fraud claim where pecuniary loss is alleged in the complaint."); *Veilleux v. NBC*, 8 F. Supp. 2d 23, 32 (D. Me. 1998) ("Although Veilleux offers little in the way of direct evidence that the broadcast caused his loss of business, he has come forth with sufficient circumstantial evidence to justify an inference to that effect at this stage of the proceedings.").

As noted above, the Dubes have nothing in the record in terms of land valuation, meaning there is no baseline to establish by how much they overpaid, and how much extra they are paying in taxes. That being said, not only have they alleged pecuniary losses, but it is also likely that they have suffered pecuniary losses. *See Saucier v. Newheight Grp.*, No. CV-18-317, 2019 Me. Super. LEXIS 26, at *7 (Jan. 17, 2019) (Mills, J.) ("To demonstrate pecuniary loss, the plaintiff must have suffered economic, 'out-of-pocket' damages as a result of the defendant's misrepresentation."). Because this stage of the proceedings does not require the Dubes to plead a specific dollar figure, and instead merely requires that there be a genuine factual dispute, the court denies summary judgment as to Counts I and III of the Complaint.

14

## CONCLUSION

The entry is:

Motion for Summary Judgment filed by Defendants Maine-Ly Lakefront Properties, LLC and Timothy O'Brien is GRANTED IN PART AND DENIED IN PART. Summary Judgment is GRANTED as to Counts II and IV of the Complaint. Summary Judgment is DENIED as to Counts I and III of the Complaint.

The Plaintiffs' Objection to the Expert Witness Designation submitted by the Defendants is DENIED.

The clerk is directed to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

Dated: December 18, 2019

William R. Stokes
Justice, Superior Court

15